GERTRUDE S. KRAMER, Respondent, *v.* EDWIN G. KRAMER,
Appellant.

BILLS AND NOTES — CONSIDERATION — WHEN NOTE GIVEN TO SECURE
PEACE BETWEEN NEWLY-MARRIED COUPLE UNENFORCEABLE FOR WANT
OF CONSIDERATION. A written promise by a stranger in the form of a
note given to a husband in order that he might deliver the same to his
wife, to whom it was made payable, in order to secure peace between
a newly-married couple, is without consideration, and the wife cannot
recover the amount of the note from the maker thereof; and neither the
possession of the note by the plaintiff, not the use therein of the words
" Value received " creates any question of fact for the jury in the trial
of an action brought upon the note.

*Kramer* v. *Kramer,* 90 App. Div. 176, reversed.

(Argued April 24, 1905; decided May 30, 1905.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Jan-
uary 20, 1904, which reversed a judgment in favor of defend-
ant entered upon a verdict directed by the court and an order
denying a motion for a new trial and ordered a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*Alton B. Parker, Daniel P. Hays* and *Ralph Wolf* for
appellant. In an action upon a negotiable instrument, as in
all other actions, the burden of proving a consideration
remains at all stages of the case with the plaintiff. A nego-
tiable instrument imports consideration, but when evidence
is introduced on the part of the defendant, which shows, or
tends to show, want of consideration, it is incumbent upon the
plaintiff to show by a fair preponderance of all the testimony
that there was a sufficient consideration. (*F. L. & T. Co.* v.
*Siefke,* 144 N. Y. 354; *Heinemann* v. *Heard,* 62 N. Y. 448;
*Blanshaw* v. *Russell,* 32 App. Div. 103; *Bruyn* v. *Russell,*
52 Hun, 17; 60 Hun, 280; *Bringman* v. *Von Glahn,* 71
App. Div. 537; *Perley* v. *Perley,* 144 Mass. 104; *Delano* v.
*Bartlett,* 6 Cush. 360; *Small* v. *Clewley,* 62 Me. 115.)

The acknowledgment of consideration arising from the words " value received " in a note, refers to, and creates a legal presumption of, consideration moving from the payee to the maker only. (1 Rand. on Com. Paper [2d ed.], § 178; Daniel on Neg. Inst. [5th ed.] § 108; Byles on Bills, 88; Story on Prom. Notes, 51; Chit. on Bills, 186; Benj. Chalm. Dig. 15; *Clayton* v. *Gosling*, 5 B. & C. 361; *Highmore* v. *Primrose*, 5 M. & S. 65; *Grant* v. *Dacosta*, 3 M. & S. 351.) It being conceded by the testimony of the plaintiff that no consideration moved from her to the defendant for the note in suit, and it appearing that there was no consideration between the defendant and his brother, the defendant's defense of want of consideration was established. (*Kramer* v. *Kramer*, 80 App. Div. 23.)

*W. W. MacFarland* for respondent. The ante-nuptial agreement was a good consideration for the note. (Brown on Stat. of Frauds, § 115; *Murdock* v. *Gilchrist*, 52 N. Y. 242; *Remington* v. *Palmer*, 62 N. Y. 31; Wald's Pollock on Cont. [2d Am. ed.] 609, 611, 612; Browne on Stat. of Frauds, § 116; *Newman* v. *Nellis*, 97 N. Y. 291.) As between the plaintiff and the defendant there was a sufficient consideration for the note. (*Rector* v. *Teed*, 120. N. Y. 583; 1 Evans' Pothier, 433; 2 Evans' Pothier, 16; *Becker* v. *Fischer*, 13 App. Div. 555; *Stack* v. *Weatherwax*, 24 N. Y. S. R. 91; *T. Nat. Bank* v. *Parker*, 130 N. Y. 415; *White* v. *Hoyt*, 73 N. Y. 505; *Wahl* v. *Barnum*, 116 N. Y. 87; *Struthers* v. *Smith*, 85 Hun, 262; *Mathews* v. *Mathews*, 154 N. Y. 288.)

O'BRIEN, J. This was an action on a promissory note of twelve thousand dollars, dated at Boston on the first of April, 1901. It is signed by the defendant. The body of the instrument is not in the usual form but the promise is expressed in these words : " After date I or my estate promise to pay to the order of Gertrude Short Kramer twelve thousand dollars at 6% interest from date at 474 Commonwealth Avenue, Boston, Mass. Value received. $12,000. No. 1 Due." The

defense to this note was want of consideration. It seems to me that it may be safely said that no one contends that the note was given for any debt or other legal obligation as between. the plaintiff and the defendant. The defendant owed the plaintiff. nothing and was under no legal obligation to give the note in question.

The plaintiff is the wife of Alfred E. Kramer, a brother of the defendant, the maker of the note. The plaintiff and the defendant's brother became engaged May, 1898. They were married November 9, 1898, and at the time of the execution of the note in question they were living together as husband and wife and it may be presumed that they are still living together, since nothing to the contrary appears in the record. The theory upon which a consideration for this note is made out is that before the marriage it was contemplated that some provision should be made by the prospective husband for the plaintiff and that between the date of the engagement and the date of the marriage there were a great many family conversations upon this subject. The plaintiff claims that it was agreed that the prospective husband should settle upon her ten thousand dollars, that amount to be increased as he might be able, and it is said that the last conversation on this subject took place the day before the marriage. There was no payment of any money nor any settlement of property in any form made upon the plaintiff. It is claimed that after the marriage the financial condition of the husband was disappointing to the wife and that she insisted upon the performance of the promise made during the engagement.

On the trial the deposition of the defendant was read and it is claimed by the learned counsel for the plaintiff that his testimony pointed to a consideration for the note. He has quoted from the defendant's deposition read by the plaintiff some of the conversation that took place between the plaintiff's husband and the maker of the note at the time it was given. The husband said to him : "I want to have you give me a note for a certain amount. This was the latter part of March, 1901. He came to me at the hotel where I was

lunching at noon time and said to me, 'I must have a note. *I want to give a note to my family.* They have been hounding me for nearly a year that I have not got anything.' And I said to him, 'Why, that is not my business, I am all through with you. I owe you no money and why should I give you a note?' He said to me, 'Well, he did not know of any one else to call upon and called upon me to give him this note,' and I foolishly did so and I think it was dated. Q. Did you deliver the note to him? A. No, sir. Q. What did you do with it? A. I mailed it to him."

It is very plain, I think, from this testimony that the wife was disappointed in finding that her husband's means were not as she expected at the time of the marriage; that there was some trouble in the family, growing out of this circumstance and that the husband procured his brother, this defendant, to execute the note for the purpose of promoting peace in the family. The defendant says, in effect, that he told the husband to show the note to the wife and that he did not intend it should be delivered. However that may be, it must be regarded as a settled fact in the case that the husband delivered the note to his wife, the plaintiff, in an envelope upon which was indorsed, in substance, the words that the note was the property of the plaintiff, and I assume that there was no question about the delivery, since the plaintiff produced the note at the trial, and so the sole question is whether the note has any legal consideration to support it. It was not given in consideration of a promise on the part of the plaintiff to marry the defendant's brother, since it was given more than two years after the marriage was consummated. It was not given for any debt or obligation as between the plaintiff and the defendant. It was not given for any debt or legal obligation as between the defendant and his brother, the plaintiff's husband.

As I understand the argument of the learned counsel for the plaintiff, he contends that the note is a written promise made by the defendant in consideration of marriage; that is to say, in consideration of the marriage between the brother

of the maker and the plaintiff. On the first trial of the case judgment was directed in favor of the plaintiff but upon appeal the judgment was reversed and a new trial granted. (*Kramer* v. *Kramer*, 80 App. Div. 20.) On the new trial the learned judge directed a verdict for the defendant, but that judgment has been reversed and the defendant has appealed to this court. I am not able to perceive much, if any, difference in the facts as they appear now and appeared at the first trial. On both appeals below the question of consideration was involved and it is difficult to see how the plaintiff's case is any stronger now than it was at the first trial.

If the plaintiff's promise to marry was conditioned upon the payment of money or the settlement of property upon her by her intended husband she was not bound to carry out the promise until the conditions were performed. All verbal promises made by either party during the engagement must be deemed to be merged in the marriage. A marriage already consummated could not very well constitute a valid consideration for the note. The maker of the note was, in law, a stranger to the marriage and to the whole transaction, and so far as the record discloses appears to have made the promise in order that it might be shown to the plaintiff for the promotion of peace between herself and her husband. I do not think that it has ever been held nor do I think that it can be held that such a promise made under such circumstances is supported by a valid consideration. The learned judge who directed the verdict for the defendant in this case at the trial has stated the question so clearly and so much better than I can state it that his language may be quoted :

" The defendant has received no consideration for the note either from the plaintiff or from his brother. He has given that note to his brother for a specific purpose, namely, to show it to the latter's family and secure peace thereby. The brother takes the note and puts it in an envelope, actually delivers it to the plaintiff and says that it is her property. There was no consideration moving to the defendant, and the

31

plaintiff had the note, not for money paid by her to her husband nor yet in payment of a pre-existing debt. Nor, in fact, in satisfaction of any legal obligation on the husband's part. It follows, in my judgment, there being no consideration for the note in any aspect of the case, that the verdict should be directed for the defendant."

I do not think that the possession of the note by the plaintiff or the use of the words " Value received " create any question of fact for the jury. The case of *Strickland* v. *Henry* (175 N. Y. 372) is not an authority for any such proposition. That was doubtless a close case, but it was decided in this court upon no such state of facts as we have now before us in this case.

There was but one witness sworn at the trial who gave any evidence concerning the consideration of the note, and that was the defendant himself. His deposition was taken before trial and was used at the trial by both parties, and all we know about the consideration we know from him. There does not appear to be any dispute, however, about the origin and consideration of the note. It was given to promote peace in the family. There is no proof upon which to base any claim that the note was business paper, or that the maker owed his brother anything, so that all the facts bearing on the question of consideration must be taken as stated by him. After carefully considering all the arguments in support of the proposition that the note is founded upon a legal consideration, including the learned opinion below, it seems to me that they place too great a strain, not only upon the law of contracts, but the law that governs domestic relations. I do not think that any principle, or any case, has been found to the effect that a written promise by a stranger, in the form of a note given to a husband in order that he might deliver the same to his wife to secure domestic peace between a newly-married couple, is, in law, a good promise in consideration of marriage. The circumstance that the one who made the promise was the brother of the distressed husband cannot change the case. It remains just the same as if the promise was sent to some

other husband for the benefit of some other wife. The real
and only consideration for the note was family peace between
husband and wife. That is a most desirable condition to
promote, but it seldom can be purchased with money. The
efforts of the defendant in that direction were laudable, but
clearly he never intended to fasten upon himself a large legal
obligation, nor does the law under such circumstances impose
it upon him. The young wife ought not to be encouraged to
place her husband in such a position as to drive him to a
stranger in order to procure a note to give her as a condition
of domestic peace. It is her duty to see to it that peace is
maintained without price, so far as it is within her power.
Moreover, it is not at all probable that such temporary
arrangements to secure peace will accomplish the desired end.
It is more likely to make the breach in the family wider than
it was before. The peace and harmony of husband and wife
must rest upon considerations much broader and deeper than
are invoked to sustain the note in question. In any aspect of
this case it would seem to be impossible to make anything of
this note but a naked promise, and so was not the subject of an
action.

Marriage, though one of the most important and common
of all contracts, is very often followed by disappointment of
one or the other of the parties and often by both. This case
is an example in that respect. The wife was evidently dis-
appointed at the financial condition of her husband and the
husband may have been disappointed at the exactions of the
wife. Instead of going on together and facing the battle of
life they probably indulged in crimination and recrimination.
I do not think that this court ought to strain legal principles
in order to accomplish some imaginary equity that exists on
one side or the other. Neither statutes nor judicial decisions
can do much to promote the peace and harmony of the mar-
riage relation. It may do more harm than good for this
court to hold that the wife may enforce a promise to pay
money under the circumstances here disclosed. It is quite
clear that such a decision will do nothing to promote peace

and harmony between husband and wife and it may do much to encourage family dissensions.

It often happens that a man acts upon the supposition that he is about to marry a wealthy woman, who has led him to believe just what the plaintiff says she believed and was promised, and he may feel disappointed after the marriage, just as the plaintiff was disappointed at the financial condition of her husband; but if the disappointed husband should procure a note from his wife's brother under just such circumstances as the note in suit is given in order to pacify him or assuage his grief and had brought suit against the maker, I am not sure that his action would be taken seriously, and surely there cannot be one law for the wife under such a state of facts and another law for the husband on the same facts. It seems to me that the learned trial judge decided this case correctly, and so I am in favor of reversing the order of the Appellate Division and affirming the judgment entered upon the direction at the trial, with costs.

GRAY, J. (dissenting). I think that the determination of the Appellate Division should be affirmed by us. Whether the defendant established that there was no consideration for the note was a question, upon the evidence, for the jury to decide. That there was a delivery of the note to the plaintiff was conceded by the learned judge, who presided at the trial, and there can be no question, in my opinion, about the fact. The plaintiff's husband, who obtained the note from the defendant, not only delivered it into her hands; but he wrote upon the envelope, which inclosed it, that it was her personal property and she produced it upon the trial. That he violated any understanding with the defendant in delivering it, is of no materiality; if, as between them, there was a consideration for the giving of the note. If this note was given by the defendant, either, for account of some indebtedness to his brother, or as a loan to the latter to enable him to fulfill his promise to the plaintiff, in either case, the plaintiff obtained title. The only available defense to her demand for

payment was that the promise to pay was not supported by any consideration whatever. I do not think that the question of consideration as between the plaintiff and her husband is of any importance, in determining the defendant's liability. Concededly, as between her and the defendant there was no claim of any consideration passing between them; but, if the note was made and parted with upon some consideration moving between the defendant and his brother, the plaintiff obtained a valid and enforceable title to it. According to the plaintiff's evidence, intermediate the time of her engagement to be married and the marriage, her intended husband "agreed to give her $10,000, which was to be increased from time to time as he was able to do it." Not being in writing, the agreement was unenforceable under the Statute of Frauds; but, notwithstanding its invalidity and regardless of the question whether, under the circumstances, the marriage furnished the support of a consideration for such an agreement, the plaintiff's husband was not prevented from performing his promise. This has the support of reason and of authority. (*Newman* v. *Nellis*, 97 N. Y. 285.) If, after marriage, he chose to recognize his agreement as a moral obligation and, in performance, delivered the note, the plaintiff held it as her own beyond any right on his part to recall it. The defendant could not defeat his obligation to pay by setting up the invalidity of the transaction between plaintiff and her husband. All that he could rely upon, for that purpose, was the nullity of the transaction as between him and his brother. Upon that point, notwithstanding that he had denied receiving any consideration for the note and had testified that the note was not delivered by him to his brother to be used, there were facts tending to contradict him. The note recited that it was for " value received $12,000," and it was in the payee's possession.

Without regard to the evidence of the previous business relations between the brothers, those facts were sufficient to warrant the submission of the case to the jury. That was the rule laid down by this court, as recently as in the case of *Strickland* v. *Henry*, (175 N. Y. 372), cited by the Appellate

Division. That was an action upon a promissory note, where the defense was that it was made for the accommodation of the payee and that it had no legal inception. We held that the defendant *was* contradicted by an admission of his own in the body of the note that it was given for value received. It was said, in the opinion, that "while it was open to defendant to contradict that statement and to show that, as a matter of fact, it was without consideration, the note in the possession of plaintiff raised the presumption that it was given for a good consideration, and passed to plaintiff in due course of business. The defendant's evidence tended to overthrow this presumption. Whether it was true was, in view of the legal presumption raised by plaintiff's possession of the note indorsed by the payee, and the recital therein that defendant had received value for it, a question of fact to be determined by the jury." That there was no consideration for the making of this note, rested upon the defendant's evidence alone and his credibility, in view of his admission in the note and of its possession by the plaintiff, as its payee, was a question for the jury to pass upon. The direction of a verdict for the defendant was, therefore, an error; for which the Appellate Division properly reversed the judgment.

VANN, J. (and CULLEN, Ch. J., and WERNER, J., in result) concur with O'BRIEN, J.; BARTLETT and HAIGHT, JJ., concur with GRAY, J.

Order reversed, etc.