## GAGNON ET AL. v. BADEN-LICK SULPHUR SPRINGS COMPANY.

[No. 8,516.   Filed June 4, 1914.]

1. HUSBAND AND WIFE.—*Antenuptial Contracts.—Consideration.*— A promise to marry is a valuable consideration for the transfer of real estate or personal property. p. 413.

2. FRAUDS, STATUTE OF.—*Parol Contract.—Enforcement.*—The statute of frauds does not make a parol contract within the statute absolutely void between the parties, but leaves them without the power to enforce it at law or equity, and such contracts, if executed, are binding between the partes. p. 413.

3. HUSBAND AND WIFE.— *Parol Antenuptial Contracts.— Transfer of Property.—Validity as to Creditors.*—Although a wife, who is a *bona fide* purchaser of bonds from her husband, is entitled to their possession as against her husband's creditors, or as against

one claiming to be the true owner, a transfer thereof made to her after marriage, pursuant to an oral antenuptial agreement, is a voluntary transfer without consideration and void, both as to creditors of the husband and as to the one claiming to be the true owner, notwithstanding they were transferable by delivery and the wife had no knowledge of her husband's insolvency or that he was not in fact the owner of such bonds. *(Marmon* v. *White* [1898], 151 Ind. 445, distinguished.) p. 413.

4. APPEAL.—*Review.—Special Findings.—Surplusage.*—Where the court's special findings, taken as a whole, and freed from all extraneous matter, contain facts properly found within the issues, supported by sufficient evidence, and which sustain the conclusions of law stated thereon, all surplus findings will be disregarded and the conclusions upheld. p. 416.

5. ACTION. — *Conditions Precedent. — Demand.* — In an equitable proceeding involving the title to certain bonds in the actual possession of the court, no demand upon one of the claimants of the title was thereafter necessary before another claiming title to the same property could affirmatively set up in the same proceeding his claim of title. pp. 416, 417.

6. APPEAL.—*Questions Reviewable.—Questions Not Raised in Trial Court.*—A question urged on appeal is not available, where an examination of the whole record shows that the matter did not arise in the trial court either on the pleadings, or the evidence, or in any other way. p. 417.

From Orange Circuit Court; *Thomas B. Buskirk,* Judge.

Action by Sophia Gagnon against Anna S. Gagnon and others, in which the Baden-Lick Sulphur Springs Company filed a cross-complaint. From a judgment for cross-complainant, Anna S. Gagnon appeals. *Affirmed.*

*Holtzman & Coleman* and *Bailey & Young,* for appellant. *Perry McCart,* for appellee.

IBACH, P. J.—This suit involves the ownership and possession of certain bonds issued by appellee, a corporation duly organized under the laws of the State of Indiana. The suit was originally brought by Sophia Gagnon, who avers that she was the former wife of George S. Gagnon, now deceased, that she was divorced from him in April, 1910, that at the time of his death he was indebted to her for alimony in a sum approximating $22,000, that shortly after

her divorce he married Anna S. Gagnon, to whom he transferred $75,000 of bonds issued by appellee corporation, of which he was president, that he was the owner of the bonds, and transferred them to said Anna without consideration, and thereby became wholly insolvent and remained insolvent at the time of his death. Appellee corporation was made a party defendant to answer to its interest in the bonds. Sophia Gagnon asked that the gift of the bonds to Anna S. Gagnon be declared void, and the bonds be declared a part of the assets of the decedent's estate, and for a receiver to hold them pending the determination of the suit. Anna S. Gagnon filed one answer in which she denied knowledge of the indebtedness which plaintiff claims was owing her, and averred an antenuptial agreement whereby in consideration of their marriage George S. Gagnon promised to deliver the bonds in suit to her, and that on November 10, 1910, they were delivered pursuant to such agreement, that she held the bonds as purchaser, and that when they were delivered to her she had no knowledge that her husband was insolvent. She demanded that the order for the receiver for the bonds be vacated. The administrator of said decedent's estate also answered to the complaint. The corporation answered admitting all the averments of the complaint except the ownership of the bonds by decedent, but denied that he had ever owned them, averring that he had held possession of them merely in trust for the use of the company, whose property they were. Said corporation also filed a cross-complaint against all the parties in which it averred that in June, 1906, it had issued $125,000 worth of bonds which were signed by the officers of the company, and certified to by the Central Trust Company of Illinois, which delivered the bonds to George S. Gagnon, the president of the company, who thereafter kept the bonds as such president; and that in November, 1910, the bonds in question were on deposit with said trust company, were the property of appellee corporation, and said George S.

Gagnon never had any property right in said bonds and said appellee never had sold or agreed to sell any part of said bonds to said George S. Gagnon or any one else. That the alleged gift to appellant, Anna S. Gagnon, was a delivery of appellee's property without its consent and without any consideration and that such gift had never been ratified by appellee corporation. That if appellant, Anna S. Gagnon, received said bonds she did so in trust for appellee, and it was her duty as such trustee to deliver said bonds to the treasurer of the company. The prayer is that appellant, Anna S. Gagnon, be declared its trustee, and be directed to deliver the bonds to appellee corporation to be held by it for its creditors and stockholders. There were separate answers of general denial to the cross-complaint and replies thereto by appellee corporation. Later, appellant Anna S. Gagnon filed a third paragraph of answer containing the same facts in the former answer, and averring in addition that said transfer of bonds was made in the state of Illinois, pleading the laws of that state relative to the transfer of negotiable instruments, by which laws the right of property in bonds such as those in question is transferable by delivery. There was also another answer similar to the answer to the complaint, to which appellee corporation replied in general denial. The court made a special finding of facts and stated its conclusions of law thereon, in favor of appellee corporation on its cross-complaint, and against appellants and rendered judgment thereon.

The court found the facts substantially as follows: George S. Gagnon died in Orange County, Indiana, on March 19, 1911. Shortly thereafter an administrator of his estate was appointed. Plaintiff Sophia B. Gagnon, the former wife of George S. Gagnon, was divorced from him on April 23, 1910, and on October 24, 1910, he married defendant Anna S. Gagnon, who is his surviving widow. The defendant Baden-Lick Sulphur Springs Company is a corporation organized

under the laws of Indiana. Said George S. Gagnon executed a series of promissory notes made payable to plaintiff aggregating a large sum of money pursuant to an agreement made at the time of their execution in settlement of alimony allowed her in her divorce complaint. All the notes maturing up to March, 1911, were paid but default has been made in all the remaining notes amounting to $22,752.55, for which amount she filed claim against his estate, which was allowed by the administrator. Pursuant to a resolution adopted by defendant company, its bonds were issued for the purpose of retiring its previous bonded indebtedness and to make improvements on its property, said bonds to be dated February 1, 1907, and to mature ten years thereafter. To secure the payment of such bonds a deed of trust was executed to the Central Trust Company of Chicago, Illinois, as trustee, and this covered all the property both real and personal of the said Baden-Lick Sulphur Springs Company and was recorded in the county recorder's office of Orange County, Indiana. All of such bonds and this deed, were duly signed by George S. Gagnon as president of the said company as well as by the secretary. Some of the bonds were delivered to various creditors to take the place of certain notes given by the company and which had been secured by the deposit of bonds under the prior trust deed and the indebtedness was paid thereby. In November, 1910, there was on deposit with said trust company $75,000 of the bonds of the said corporation for which the said trust company had issued its receipt and delivered the same to George S. Gagnon shortly after he as president and treasurer of the company had removed the bonds from the vaults of said springs company, for the purpose of placing the the same with the said trust company and said bonds were at that time placed on deposit with said trust company for safe keeping. These were the bonds which had not been delivered to any of the creditors of the said springs company and had not been sold by such company for the pur-

pose of making any improvements on its properties, had not been sold for cash to any person and were never sold by the said corporation to George S. Gagnon. The court therefore finds that said $75,000 in bonds on deposit with the said Central Trust Company of Illinois in the month of November, 1910, were bonds of the corporation, a part of the issue of $125,000 in bonds and secured by the trust deed of February, 1907, and were in the treasury of said company. On November 25, 1910, said George S. Gagnon took said $75,000 of bonds out of deposit, with said trust company and delivered all of them to his wife, Anna S. Gagnon. She paid no money or other thing of value for them but took them and deposited them in a safety deposit vault and shortly thereafter wrote a letter to the attorney representing the plaintiff in this suit in which she stated, "You may rest assured that I will hold said bonds for the benefit of the hotel". No part of said bonds had ever been sold, transferred or in any way assigned or pledged by said springs company to any person or persons, nor has the company ever received any money or other consideration therefor. That said bonds are now in the hands of the Union Trust Company of Indianapolis as receiver therefor, pursuant to an order of the court, where they are held subject to the order of the court to be made in its final judgment. That on November 25, 1910, George S. Gagnon was insolvent.

Anna S. Gagnon appeals and seeks a reversal because of the alleged error of the court in sustaining the motion to strike out all the evidence of witnesses Marie L. Suhs and George B. Rubens, which was one ground of her motion for new trial. Appellee contends that the evidence referred to tended to establish a parol agreement on the part of decedent to give the bonds in suit to his wife Anna in consideration of marriage, that it showed that such transfer was made after their marriage in consummation of such agreement, that since such agreement was void under the

statute of frauds, and unenforceable, such transfer was wholly voluntary on the part of George S. Gagnon, and therefore could not affect the rights of appellee, the real owner of the bonds.   Hence, it is urged, the court correctly struck out said evidence.   Our courts have held repeatedly that a promise to marry is a valuable consideration for the transfer of real estate or personal property, that such contracts are placed on an equal footing with those founded upon an adequate consideration in money.  *Marmon* v. *White* (1898), 151 Ind. 445, 51 N. E. 930, and cases cited.   The statute of frauds does not make the contract itself absolutely void between the parties, it merely leaves them without the power to enforce it at law or equity.  If they execute it, it is then binding between them.  *Hatfield* v. *Miller* (1890), 123 Ind. 463, 24 N. E. 330; *Savage* v. *Lee* (1885), 101 Ind. 514; *Fisher* v. *Wilson* (1862), 18 Ind. 133.   However, this action was not between the parties to the original antenuptial contract, but involves the rights of creditors and of the real owner in property transferred voluntarily from husband to wife in consummation of an unenforceable, oral, antenuptial agreement.   The findings of the court show that the bonds were never the property of George S. Gagnon, but that he delivered them to his wife, who so far as the findings show had no knowledge that they were not his sole property.   The bonds by their terms, under the law of the state of Illinois, (which was in evidence, the contract being made in Illinois) were transferable by delivery.  If the evidence and findings showed that said Anna was a *bona fide* purchaser of the bonds for value, she would be entitled to their possession, as against her husband's creditors, and even against appellee, the actual owner.   But if she held them by virtue of a mere voluntary transfer to her by her husband, the rights of his then existing creditors, or of the actual owner, are superior to hers.  If the evidence which was stricken out

tended to show that she was a *bona fide* purchaser for value without notice, it should have been admitted. But, the courts almost without exception hold that the transfer of real or personal property from husband to wife after marriage, made pursuant to an oral antenuptial agreement, is a voluntary transfer without consideration, and void as to intervening or existing creditors. *Read* v. *Livingston* (1818), 3 Johns. Ch. 481, 8 Am. Dec. 520; *Manning* v. *Riley* (1893), 52 N. J. Eq. 39, 27 Atl. 810; *Deshon* v. *Wood* (1888), 148 Mass. 132, 19 N. E. 1, 1 L. R. A. 518; *Keady* v. *White* (1897), 168 Ill. 76, 48 N. E. 314; *Kramer* v. *Kramer* (1905), 181 N. Y. 477, 74 N. E. 474; 2 Elliott, Contracts §1250; 20 Cyc. 158; *Flory* v. *Houck* (1898), 186 Pa. St. 263, 40 Atl. 482; *Richardson* v. *Richardson* (1893), 148 Ill. 563, 36 N. E. 608, 26 L. R. A. 305; *McAnnulty* v. *McAnnulty* (1887), 120 Ill. 26, 11 N. E. 397, 60 Am. Rep. 552; *Clow* v. *Brown* (1906), 37 Ind. App. 172, 72 N. E. 534. In the last cited case this court said, "A postnuptial settlement, if not shown to be made pursuant to and in compliance with a valid antenuptial agreement therefor, must as against existing creditors, be regarded as voluntary, unless founded upon a valuable consideration other than marriage." The reason for the rule is well expressed in the following words from the opinion in *Manning* v. *Riley, supra:* "Now if an antenuptial parol promise to make a settlement can not be made the foundation of an action—and that is the expressed mandate of the statute—it follows necessarily that such a promise imposes no legal duty on the promisor; by making it, no legal duty is imposed or obligation incurred, and its breach consequently creates no legal liability. Its performance therefore is an act of pure grace—the doing of a favor and not the doing of a duty—and so is voluntary in the strongest sense of that term. But it has been said that while such a promise imposes no legal duty, it creates a moral obligation, and that such an obligation should be held to be a sufficient consideration for a

postnuptial settlement and free it from the imputation of fraud even as against creditors. The answer, however, made by Lord Northington in *Spurgeon* v. *Collier* [1758], 1 Eden 55, 61, and adopted by Lord Cranworth in *Warden* v. *Jones* [1857], 2 DeG. & J. *76, to this argument, must, I think, be considered conclusive. Lord Northington said: 'If such a parol agreement were to be allowed to give effect to the subsequent settlement, it would be the most dangerous breach of the statute and a violent blow to credit, for any man, on the marriage of a relation, might make such promise of which an execution never could be compelled against the promisor, and the moment his circumstances failed he would execute a settlement, pursuant to his promise, and defraud all his creditors'.''

Our attention has been called to the case of *Marmon* v. *White, supra,* as holding that where there were no circumstances showing a fraudulent intent, a voluntary transfer by a husband to a wife in consummation of a parol antenuptial agreement might be upheld as against creditors. In that case it does not appear that any question was raised upon, or that the Supreme Court considered, the fact that the contract was an oral one. Neither does it appear that the husband in that case was insolvent when the executory contract was subsequently settled. The real ground of the decision is that there was no fraud in the conveyance. Moreover, the case of *Clow* v. *Brown, supra,* was decided since *Marmon* v. *White, supra,* and a petition to transfer the cause from this court to the Supreme Court was denied. In cases such as the present, where the findings show that George S. Gagnon transferred to his wife bonds of which he was not the owner, but which he held in trust, this court will not hold that the consummation of an invalid antenuptial agreement between him and his wife will prevent the actual owner from receiving back its property.

Appellant contends that certain of the court's special findings are not of the ultimate facts, but are merely state-

ments of the evidence. If this were true and such
findings as are complained of were entirely eliminated
from our consideration, there still remain the find-
ings that the bonds in suit had never been transferred to
George S. Gagnon by appellee corporation, and were not
his, but were at all times the property of the corporation.
Notwithstanding this fact, he took them from the company's
depository, and delivered them to his wife, who paid the
company no consideration whatever. Furthermore, it is
found that such bonds had not been sold to any other per-
son or transferred to any one for any consideration passing
to the company and these findings in favor of appellee are
all the facts essential to its recovery. These facts conclu-
sively show that the decedent was not the owner of the
bonds in suit, and his wife Anna would occupy no better
position unless it appeared that she was a purchaser for
value, and these facts together with others found clearly
are sufficient to sustain the conclusions of law. The rule
is in such cases that where the special findings by the court
taken as an entirety and freed from all extraneous matter,
still contain facts properly found within the issues, sup-
ported by sufficient evidence, which sustain the court's con-
clusions, all surplus findings will be disregarded, and the
court's conclusion will be upheld. *Whitcomb* v. *Smith*
(1890), 123 Ind. 329, 24 N. E. 109; *Talbott* v. *English*
(1901), 156 Ind. 299, 59 N. E. 857.

No demand was necessary on the part of appellee cor-
poration before filing its cross-complaint. The original
complaint in the case was filed September 30, 1911.
Shortly thereafter the Union Trust Company was ap-
pointed receiver and the bonds were in its possession
at the time appellee's cross-complaint was filed, or in other
words, the bonds in suit were in the custody of the court
when the springs company entered its appearance in the
case, so that under this state of facts any demand upon
Anna S. Gagnon for the bonds would have been useless.

She was then in no position to comply with such a demand if she had so desired. Moreover, an examination of 6. the whole record shows that no such contention was made by appellant at the time of the trial. No such defense was made in the pleadings, or was shown by the evidence, or by any motion made by appellant in the court below. It is now too late to insist that a demand should have been made upon appellant before filing the cross-complaint, the cause having been tried by appellant upon the ground that she was a purchaser for value and without notice and had a good title to the bonds, all of which was denied by the appellee and by it title was claimed to the same property.

Besides, we are of the opinion that this is not strictly 5. speaking, a replevin suit, subject to all the rules of law applicable to such actions, but is an equitable proceeding wherein the title to certain bonds was in issue and which were in the actual possession of the trial court when the springs company filed its cross-complaint and we know of no case which holds under such circumstances a demand should be made upon one of the claimants to the title to the property before any other party claiming title also to the same property would be permitted to affirmatively set up in the same proceeding his claim of title.

We find no error, and the judgment is affirmed.

NOTE.—Reported in 105 N. E. 512. As to right of husband's creditors to attack antenuptial settlement, see 90 Am. St. 509. For a discussion of the validity of a conveyance in consideration of marriage as against creditors of the grantor, see 21 Ann. Cas. 473. See also, under (1) 21 Cyc. 1246; (2) 20 Cyc. 302; (3) 21 Cyc. 1244; (4) 38 Cyc. 1964; (5) 1 Cyc. 698; (6) 2 Cyc. 660.