In the Matter of the Estate of PATRICK F. HEANEY, Deceased.

Surrogate's Court, Kings County, March 18, 1930.

*William L. O'Malley*, for the petitioner.

*Fay, Rubin & Gallatin*, for the claimant.

WINGATE, S. This proceeding arises upon a contest interposed against the account of the executrix. The objections are of a twofold nature, *first*, as to certain payments set forth in the accounts; and *second*, as a result of her rejection of a claim of the objector upon a promissory note in the sum of $11,000.

The objections of the first class are not sustained by the testimony. The reasonableness of the funeral bill was conceded on the record. The claims of Daniel O'Brien and William L. O'Malley were proved by unimpeached testimony and no evidence was adduced in support of the objections to the payments set forth in Schedule E of the account. These contentions of the respondent are, therefore, overruled.

The question regarding the note was the real crux of the case and

its determination requires a review of the pertinent portions of the testimony adduced.

At the time of his death on February 21, 1929, the decedent was eighty-two years of age. From the month of April, 1926, up to the time of his death, he was a resident of 45 Cumberland street, Brooklyn. He had formerly been engaged in the hat business, in which he had acquired a modest competency, retiring in 1909. In 1917 his wife met with a serious accident, at which time she was nursed and attended by Miss Anna J. O'Brien, who was her cousin and is the executrix herein. She apparently recovered from the attendant disability.

For about ten months after decedent and his wife moved to the Cumberland street address, the claimant, who was decedent's nephew, and his wife, according to their own testimony, visited them almost every week and did some cooking and cleaning for them. Although no objection was interposed to this testimony, it appears of doubtful competency. (Civ. Prac. Act, § 347; *Matter of Brush,* 136 Misc. 581.) It appears, however, that when the decedent's wife was taken down with her mortal illness in February or March, 1927, claimant's wife " wasn't able to come " to her aid, and the executrix, Miss O'Brien, gave up her position at Schrafft's and again nursed and cared for her. This attending continued until the wife died and Miss O'Brien then stayed on and performed like services for the decedent until his death.

The testimony of the attending physician establishes that the decedent received medical attention beginning as early as February 28, 1927 (at which time he was about eighty years of age), and grew progressively worse; that his ailment had reached such a stage in December, 1928, that he was occasionally " flighty " and delirious; that " his mental faculties failed " and his hands shook so greatly that he was unable properly to feed and care for himself. On December 24, 1928, a priest was summoned to anoint him. He died on February 21, 1929.

It is alleged that the note which is the basis of the second objection was signed by decedent about one P. M. on December 31, 1928. The testimony respecting the circumstances surrounding its execution is illuminating. The claimant made out the note and induced his employer, an individual by the name of Grossman, who had never previously met decedent, to accompany him, stating that " his uncle wanted to give him some money." On arrival at the house the claimant left Grossman, gained access to the house through an alley, and then returned, telling him that " she is out." Grossman's explanation of this conduct was that the nephew wanted " to see whether he was all alone, as he didn't want to bring

me up while the lady was there." The "lady" in question was Miss O'Brien, who seems at all times to have carefully guarded decedent's interests and attended to his welfare. She happened at the moment to be out on a short shopping trip. The testimony of the claimant and this witness was that the note was signed by the decedent at this time. By its terms decedent promised to pay the claimant $11,000 on demand. Grossman testified: "I fully believe he knew what he was doing;" but from the nature of decedent's illness and all the other pertinent facts in the case, including the surreptitious method by which the execution of the note was obtained, the court would require a higher degree of proof than that here supplied were the question of any particular materiality.

The real nature of the note transaction is demonstrated to the satisfaction of the court by the testimony of this same witness, Grossman. As noted, he testified (Stenographer's Minutes, p. 11) that the claimant said " his uncle wanted to *give him* some money." He further testified (Stenographer's Minutes, p. 13) that at the time the note was executed and delivered to the claimant, the decedent said: "I want to *give* Heaney some money—I want to *give* Pete some money." There was no " claim that he owed Peter Heaney money." (Stenographer's Minutes, p. 22.)

It is apparent that if the note was actually made and delivered by the decedent to the claimant at a time when the former was mentally competent to transact such business, which facts are assumed but by no means decided, the transaction was purely a gift of such note. The only semblance of basis for any obligation by decedent to the claimant was by reason of the occasional visits to which reference has already been made, and this appears to have been amply recompensed by the $500 legacy under the will, which postdated all such acts.

While, therefore, the note itself imported a consideration, the same condition is present in the case at bar as in *Dougherty* v. *Salt* (227 N. Y. 200) in which the court says (at p. 202): "The inference of consideration to be drawn from the form of the note has been so overcome and rebutted as to leave no question for a jury. This is not a case where witnesses summoned by the defendant and friendly to the defendant's cause supply the testimony in disproof of value (*Strickland* v. *Henry*, 175 N. Y. 372). This is a case where the testimony in disproof of value comes from the plaintiff's own witness, speaking at the plaintiff's instance. The transaction thus revealed admits of one interpretation and one only. The note was the voluntary and unenforcible promise of an executory gift (*Harris* v. *Clark*, 3 N. Y. 93; *Holmes* v. *Roper*,

141 N. Y. 64, 66). * * * A note so given is not made for 'value received,' however its maker may have labeled it. The formula of the printed blank becomes in the light of the conceded facts a mere erroneous conclusion, which cannot overcome the inconsistent conclusion of law (*Blanshan* v. *Russell*, 32 App. Div. 103; affd., on opinion below, 161 N. Y. 629; *Kramer* v. *Kramer*, 181 N. Y. 477; *Bruyn* v. *Russell*, 52 Hun, 17). The plaintiff, through his own witness, has explained the genesis of the promise, and consideration has been disproved (Neg. Instr. Law, sec. 54; Consol. Laws, chap. 43)."

It follows that the " note " in the case at bar, if of any legal import whatsoever, was merely a promise to make a future gift and is, therefore, void and a nullity as against the estate. (*Phelps' Executor* v. *Pond*, 23 N. Y. 69, 78; *Curry* v. *Powers*, 70 id. 212, 215; *Bainbridge* v. *Hoes*, 163 App. Div. 870; *Matter of Wiles*, 101 Misc. 701.)

All objections are, therefore, overruled.

Submit decree on notice accordingly.