STROUP *v.* MYER, ADMINISTRATOR, ET AL.

[No. 16,031. Filed May 23, 1939.]

*F. C. Croddy* and *Atkinson & Sanders,* for appellant.

*W. D. Stump, Dan M. Link* and *B. H. Miller,* for appellees.

STEVENSON, C. J.—The appellee, Glenn Myers, administrator of the estate of Scott Stammler, deceased, filed this action to set aside two judgments procured against said Scott Stammler by the appellant, Robert Stroup, which judgments were alleged to have been procured with a fraudulent intent to defeat the claims of other creditors. The action further sought to enjoin the appellee, Herbert N. Grimm, sheriff of DeKalb County, and the appellant from selling certain property consisting chiefly of machinery and equipment used in drilling oil wells, which property had been levied upon by the sheriff on an execution issued by the appellant on said judgments, and said administrator asked authority to sell said property to make assets to pay the debts of the estate. To this complaint the appellees, Eugene H. Rider et al., filed petitions to intervene, which petitions were granted. The appellees then filed cross-complaints against the appellant, the sheriff, and the administrator, alleging that they were the owners of said oil well drilling machinery and equipment under and by virtue of certain written agreements. And they likewise asked for an injunction against the sale of the property. To these cross-complaints the appellant first filed a motion

to strike out on the theory that the same was not germane to the cause of action, which motion was overruled. Ultimately the appellee Rider filed a second amended cross-complaint to which the appellant filed a motion to strike out and a demurrer, both of which were based upon the proposition that the subject-matter of cross-complaint was not germane to the issues presented by the complaint, and both of which were overruled. The correctness of these rulings is challenged in the first two assignments of error.

Similar motion and demurrers were filed to the cross-complaint of J. W. Johnson, Janet Johnson, George B. Johnson, and G. T. Ullenbruch. These were likewise overruled and these rulings constitute the fifth, sixth, seventh, and eighth assignments of error relied upon for reversal.

The case was submitted to the DeKalb Circuit Court for trial, who found the facts specifically and stated the conclusions of law thereon. The eleventh, twelfth, and thirteenth assignments of error were based upon alleged error in the first, second, and third conclusions of law respectively. The other assignments of error are not discussed in the appellant's brief and are accordingly deemed waived.

For the purposes of this case we do not deem it necessary to set out in this opinion the special finding of facts. It is sufficient to say that the evidence disclosed and the court found that the decedent, Scott Stammler, on or about the 8th day of November, 1934, was the owner of an oil well drilling equipment and had certain lease-hold interests in several tracts of real estate located in DeKalb County and prior thereto the appellee Eugene H. Rider and various other persons had advanced to the decedent money in excess of $2,500.00 to enable him to complete the drilling of said well. That G. T. Ullenbruch had advanced him $275.00 for such

purpose and the appellees J. W. Johnson, Janet Johnson, and George B. Johnson had likewise advanced decedent the sum of $275.00 for said purpose. That to protect said appellees above named and other persons who had furnished funds to said decedent, said decedent executed to each of the persons furnishing funds for said purpose a written assignment whereby said decedent assigned certain interests in and to the said prospective oil well and the well drilling machinery and equipment. This written assignment so executed and delivered to the appellees in addition to assigning a fractional interest in the prospective oil well and leasehold interests contained the following stipulation:

"It is further agreed that if this well is not a commercial oil producer, then Scott Stammler, party of the first part, shall relinquish to parties of the second part, all his right, title and interest in one Marion Turnbuckle Standard Oil Derrick, one complete string of Standard Drilling Tools, and all casing and pipe used in drilling this well. All material to be sold by parties of the second part to reimburse them for money invested in drilling said well. But if the well be a commercial oil producer, then the drilling tools shall remain the property of Scott Stammler. Then the parties of the second part will own a fractional interest in the oil derrick and casing. The interest in the derrick and casing to be the same as the leasehold interest."

The other assignments executed by the decedent to the appellees were substantially the same as the one above quoted. That subsequent to the execution of the above assignments the drilling of said well was completed but the same produced no oil and the project was abandoned by the decedent. Subsequently many of the persons to whom assignments were executed duly assigned and transferred their interests to the appellee, Eugene H. Rider, by endorsement.

The court further found that the appellee, Glenn D. Myers, as administrator of the estate of Scott Stammler,

deceased, claimed an interest in the machinery and equipment and that all of the said machinery and equipment was subject to be sold by the administrator in order to pay the debts and liabilities existing against his estate.

The court further found that the appellant held judgments against Scott Stammler in the amount of $1,840.00 on which the appellant had had an execution issued and that the appellee Herbert N. Grimm, as sheriff, had levied upon said machinery and equipment and was threatening to sell the same at sheriff's sale. Upon these facts the court stated conclusions of law as follows:

"1. The cross-complainant, Eugene R. Rider, is the owner of the 258230/313230 interest in the oil well drilling machinery tools and equipment referred to in the special finding of facts herein and the cross-complainant, G. T. Ullenbruch, is the owner of the 275/313230 interest in said machinery, tools and equipment and the cross-complainants, J. W. Johnson, Janet Johnson and George B. Johnson are the owners of the 275/313230 interest in said machinery, tools and equipment and all of the said cross-complainants are entitled to the immediate possession thereof.

"2. The cross-complainants herein are entitled to an injunction against the defendants, restraining them from levying upon, selling or otherwise disposing of said machinery, tools and equipment.

"3. The cross-complainants are entitled to recover their costs herein.

"4. The plaintiff is not entitled to recover anything upon his complaint."

On this finding of facts and conclusions of law the court rendered judgment to the effect that the appellees were the owners of the property described and restrained the appellant and Herbert N. Grimm, sheriff, from levying upon, selling or otherwise disposing of said machinery.

The appellant first contends that the court erred in

overruling the motion to strike out the second amended cross-complaint of the appellee Rider for the reason that the subject-matter therein contained was not germane to the plaintiff's cause of action.

It will be noted that the amended complaint was filed by Glen Myers, administrator, against the appellant and the sheriff of DeKalb County challenging the appellant's judgments on the basis of fraud, and the administrator asked that the judgments be vacated, that the defendants be enjoined and restrained from levying upon said machinery and equipment and the administrator be authorized to sell said property to pay the debts of said estate. After the filing of this complaint the appellees, Eugene H. Rider and others, intervened and filed their cross-complaints. These cross-complaints set up their interests in the well drilling machinery and equipment obtained by the written assignment from Scott Stammler, deceased, and alleged that the claims of both the appellant and Myers as administrator to the property involved were unfounded. The cross-complaints further alleged that both the appellant and Myers, as administrator, if permitted to sell said property either at administrator's or sheriff's sale, would cause the property to become scattered, dissipated, and wasted and the cross-complainants would suffer irreparable damage and loss thereby. The cross-complainants accordingly asked that the defendants be restrained and enjoined from selling the property and that they be adjudicated the owners thereof. It is apparent from a reading of the complaint and the cross-complaints filed in this case that both the plaintiff and cross-complainants have invoked the jurisdiction of a court of equity and asked the court to determine their respective rights accordingly. Both the plaintiff Myers, administrator, and the cross-complainants were challenging the right of the appellant to proceed with the

sale of the property involved. The relief sought by the cross-complainants was to prevent a dissipation and sale of their property by either the appellant, the appellee Myers, or the sheriff. All of these matters were involved in the principal action and were germane to the matters which the court must of necessity consider in passing upon the issues presented in the original complaint. As was said by our Supreme Court in *Muir* v. *Robinson* (1933), 205 Ind. 293, 302, 186 N. E. 289: "We can see no good reason why the whole controversy between the original parties should not be settled in one suit." This same authority holds that a liberal construction should be adopted in passing upon the sufficiency of cross-complaints and that they are sufficient if they reach the object of the action. In a later decision a counter-claim was approved in order to settle the entire controversy between the parties and thus save a multiplicity of suits. *Gillespie* v. *Hunt* (1938), 214 Ind. 229, 14 N. E. (2d) 1014.

The second proposition advanced by the appellant is to the effect that the assignments to the appellees herein were in effect chattel mortgages and since they were not recorded within ten days after the date of execution in the county where the property was located, they are void as against appellant's judgments. Whether or not the instruments involved and the transactions out of which they grew constitute them chattel mortgages or conditional sales is a difficult question.

In discussing the distinction between a chattel mortgage and a conditional sale the rule has been announced as follows: "The difference is that a mortgage is a security for a debt, while a conditional sale is a transfer of ownership for a price paid, or to be paid, to become absolute on a particular event. . . . In the case of a conditional sale no present title vests in the purchaser but his title rests upon the performance

of the condition prescribed in the contract, while in the case of a common-law mortgage the title passes at once to the mortgagee, subject to be repassed on the performance of an express condition subsequent." (Amer. Jur. 721.)

Applying these rules to the instrument involved, the record discloses that the decedent, Scott Stammler, agreed to "relinquish to the parties of the second part all his right, title and interest in one Marion Turnbuckle Standard Oil Derrick, one complete string of standard drilling tools, and all casing and pipes used in drilling this well," this relinquishment to take place "if this well is not a commercial oil producer." Under this assignment no present title vested in the appellees to the drilling machinery and equipment at the time of the execution of the written instrument, but the vesting of title depended upon the happening of a condition subsequent, to-wit, failure to produce a commercial oil well. In the event a commercial oil producer was completed then the drilling tools were to "remain the property of Scott Stammler." This is not a case where legal title to the drilling machinery passed at once to the appellees subject to be repassed upon the performance of a condition subsequent.

This same distinction has been recognized by our Supreme Court in the case of *Schnieder* v. *Daniel* (1921), 191 Ind. 59, 62, 131 N. E. 816, in which the court said: "a chattel mortgage is a security for a debt and a conditional sale is a purchase for a price paid or to be paid to become absolute upon a particular event." In this same case the court said that the usual earmarks of a mortgage are first, that there is a previous debt or present advance of money upon a loan for which some evidence is taken obliging the borrower personally to the absolute payment; second, there is a bond for the debt or a covenant in the mortgage deed for the pay-

ment. It will be noted from a reading of the entire instrument that nowhere does the deceased, Scott Stammler, promise to repay the money involved. What he did in the instrument in question was to "grant, bargain, sell, remise, release and assign" unto the appellees certain fractional interests in oil and gas leaseholds owned by Stammler, and as to these interests at least, the instrument was unquestionably a bill of sale. This same intention was manifest as to the oil derrick and casing, and in the event that Stammler should construct a commercial oil producing well, the drilling machinery remained the property of Stammler. No note was given by Stammler as evidence of an indebtedness due and owing the appellees nor was there ever any promise made to repay the amount invested by them.

It is our opinion therefore that the written instrument in question was not a chattel mortgage and the trial court was not in error in treating this transaction as a sale.

The appellant contends however that even though the transaction be a sale, the court was in error in awarding possession of the property to the appellees for the reason that no demand was made upon the sheriff or the appellant for possession before instituting this action. It is our opinion that no demand was necessary in this case since the original action so far as the sheriff was concerned was to enjoin the sale of the property which he had levied upon. The cases cited by the appellant in support of his contention that a demand is necessary are cases where the property involved had passed into the hands of a bona fide purchaser. It will be noted that the appellant in this case does not occupy a position as bona fide purchaser. He is at most a judgment creditor and the only interest that he has in the property in suit, if any, is that of a mere lien. If the deceased Stammler in fact had no interest in the prop-

erty then there was nothing on which the lien of the judgment could rest. "The interest which the lien of a judgment affects is the actual interest which the debtor has in property." *Wright, Admr.* v. *Jones et al.* (1885), 105 Ind. 17, 28, 4 N. E. 281; *Apple* v. *Robb et al.* (1913), 54 Ind. App. 359, 103 N. E. 12.

As a matter of fact, neither the appellant nor the appellee, Herbert N. Grimm, as sheriff, has such possession of the property in suit at the time the cross-complaints were filed as would make a demand necessary. This was not, strictly speaking, a replevin suit but was an equitable proceeding wherein the title to the property in question was an issue. The property was in the actual custody of the law when the appellees filed their cross-complaints and under such circumstances no demand was necessary. *Gagnon* v. *Baden Lick Springs Company* (1914), 56 Ind. App. 407, 105 N. E. 512.

The appellant further contends that the said Stammler never conveyed to the appellees any interest in the property for the reason that the well which he had attempted to drill was not extended "into the trenton rock." The assignment conveyed to the appellees a fractional interest in the oil and gas leaseholds in certain described lands "with the well completed to and into the trenton rock without any further cost to the second party" (assignee). There was ample evidence to sustain the finding of the court that even though the well was not extended "into the trenton rock" the said Stammler found it impossible to complete the same and the project was abandoned. Under these conditions it is our opinion that the assignees became entitled to the machinery involved and the failure of the said Stammler to extend the well into the trenton rock could not now be asserted as a defense against the claim of the appellees to the property transferred. Title to the

well drilling machinery was to pass upon the failure to construct a commercial oil producing well and title vested upon the happening of this condition.

We accordingly hold that the evidence was sufficient to support the finding of the court on this issue. Finding no reversible error, the judgment of the trial court is accordingly affirmed.

Judgment affirmed.