HART, Receiver, *v.* THE BARNEY & SMITH MANUF'G Co.*

*(Circuit Court, D. Kentucky.* May, 1881.)

1. RECEIVERS—WHAT RIGHTS THEY REPRESENT—RES JUDICATA—WHEN APPLICABLE—CONDITIONAL SALES OF PERSONAL PROPERTY—GOVERNED BY LAW OF PLACE WHERE PROPERTY SITUATED.

The B. & S. Co. sold B. two railroad cars under an agreement that the title should not pass until the balance of the purchase price was paid, and that in the event of a failure to pay the same, or of a seizure of such property by legal process or otherwise, the vendor should have the right to take possession and sell the cars, etc. The contract was made, the cars were delivered, and the purchase money was payable in Ohio; but the cars were used on a railroad in Kentucky, and the redelivery or reclamation was to take place there, as provided by the contract. The court found as a matter of fact that B. subsequently sold said cars, either to the C., F. & P. G. R. Co., or to Q. Creditors of Q. attached certain property, (including said two cars,) then on said railroad, making the railroad company a party. Hart (plaintiff herein) was appointed receiver to take charge of the property. The B. & S. Co. brought suit against B. alone, upon its contract of conditional sale, obtained judgment, and seized said two cars. In an action of replevin by Hart, receiver, to recover the same, *held:*

(*a*) That the receiver has all the rights, in this contest, to the property in controversy, which any or all the parties to the suit in which he was appointed have.

(*b*) That the rights of the B. & S. Co. as against the receiver have not been changed by its suit and judgment against B.

(*c*) That the rights of the parties to this suit are governed by the laws of Kentucky, and not those of Ohio.

2. CONDITIONAL SALES OF PERSONAL PROPERTY—SECRET LIENS—KENTUCKY REGISTRATION ACT.

A conditional sale of personal property, or other agreement by which the vendor retains the title or a lien until the purchase price is paid, the vendee becoming unconditionally bound for such purchase price, is within the Kentucky registration act, and is not valid as against purchasers for valuable consideration without notice, or creditors, unless recorded in accordance with its provisions.

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

3. SAME.

> The contract of conditional sale not having been recorded in Kentucky, *held, further,* that the right of the attaching creditors of Q., and of the railway company, is superior to that of the B. & S. Co. under its contract.

Action of Replevin.    Motion for New Trial.

*Wm. Hendricks,* for plaintiff.

*Lincoln, Stevens & Slattery* and *Stevenson & O'Hara,* for defendant.

BARR, D. J.    In this case, by agreement of parties, a jury was waived; and the court gave judgment for the plaintiff. The defendant has moved the court for a new trial, and the respective counsel have argued the matter with much ability and earnestness.    The amount involved is not large, but the questions are important, and it is due to the case, as well as the counsel, that I should state the reasons for the conclusions which are decisive of the case.    These conclusions, as heretofore filed, are substantially—(1) That the plaintiff, who is the receiver of the Fleming circuit court, has all the rights, in this contest, to the property in controversy, which all or any of the parties to the consolidation suits in which he was appointed have; (2) that the rights of the Barney & Smith Manufacturing Company have not been changed as against plaintiff and those he represents by the suit and judgment in this court, in 1879, and hence defendant must rely in this action alone upon its contract with Berthourd, dated March 13, 1877; (3) that the rights of the parties in this contention are construed and governed by the law of Kentucky, and not by that of Ohio; (4) that the right of the attaching creditors of Quintard, and that of the Covington, Flemingsburg & Pound Gap Railroad Company, as purchaser, is superior to that of defendant under its contract of March 13, 1877.

The first and second propositions are not seriously controverted by counsel, but the others are controverted most earnestly by defendant's counsel.    The facts which are proven, or fairly inferable from the testimony, are these:    One E. N. Quintard, who was a non-resident of the state of Ken-

tucky, had, in 1877, a contract with the Covington, Flemings-burg & Pound Gap Railroad Company, in which he agreed to construct and equip, ready for running, parts of the road. The terms of the contract are not clearly shown, and there is some doubt as to whether the rolling-stock, when placed upon the road, was to be Quintard's or the railroad company's. One A. P. Berthourd held Quintard's power of attorney, and seems to have been the sole manager and controller of his interests.   There was constructed in March, 1877, a few miles of this road ready for the rolling-stock.   One engine and tender were obtained by Quintard.   Berthourd contracted in his own name for the cars in controversy.   This contract is in these words, viz.:

"This agreement between Barney & Smith Manufacturing Company, of Dayton, Ohio, of the first part, and A. P. Berthourd, of the second part, witnesseth: The said party of the first part has agreed and does hereby agree (on terms and conditions hereinafter contained) to construct for and deliver to the party of the second part, at Dayton, Ohio, on board cars, on or before March 15, 1877, the following cars, to-wit : One combined passenger and baggage car, one coal car, as agreed; said cars to be of the best material and workmanship, and to be built according to the specifications furnished by the party of the first part, and received into the qualified possession of the said party of the second part, upon the following terms and conditions :

"*First.* Upon the construction of said cars, ready for delivery into the possession of the said party of the second part, said second party is, for each and every car, to pay to the party of the first part the sum of twenty-nine hundred and thirty dollars ($2,930) for the lot, (two cars,) as follows : $1,450.32 in cash, and note at 60 days from this date for $1,479.68, indorsed by E. S. Throop, and payable at Second National Bank of Cincinnati, Ohio, without interest.   And for the deferred payments, to execute and deliver to said party of the first part the negotiable promissory notes of said party of the second part, payable at Second National Bank of Cincinnati, Ohio, and to include in each note interest at the rate of no per cent. per annum on the amount of the deferred payment for which such note is given.

"*Second.* No right, title, or interest in said cars, or any of them, (except the qualified possession, use, and control thereof as hereinafter provided) is to pass from said party of the first part or vest in said party of the second part until all of said notes, and any notes given in renewal of any of them, shall have been fully paid.

"*Third.* The said party of the second part is to have possession and use of said cars so long as the said notes given as above provided, or their renewals, are promptly paid at maturity, as they severally become due, and they are to keep all the said cars in good order and repair; and if

v.7,no.5—35

any one or more should be injured or destroyed, either on said road of said party, or any other party, or any other road, to repair or replace forthwith every car injured or destroyed. But if said party of the said second part shall fail to pay any of said notes, or any renewal thereof, as it becomes due, or within 30 days thereafter, or shall cause or suffer any of said cars to be taken out of their said possession by legal process or otherwise, then the said party of the first part may, without demand and without legal process, resume the possession of all of such cars, wherever found, as they may deem necessary, and transport the same to their places of business at Dayton, Ohio, or any other place, at the expense of the party of the second part, and may thereafter sell the same at public or private sale, after 10 days' written notice to said party, and apply the proceeds on the unpaid notes, whether due or not; the said party of the second part still remaining liable for any balance of such notes thereby unpaid. And it is further provided, said cars being of narrow gauge, and therefore inconvenient for transportation, that, upon any default in payment as aforesaid, the said second party, on demand of said first party, shall place all of said cars upon such convenient side tracks of its road as said first party may select, and hold the same without use or charge, subject to sale, etc., as aforesaid, by said second party.

"*Fourth.* In case the party of the first part shall fail to deliver all or any part of the cars on the aforesaid contract within the time named therein, by reason of delay of delivery of materials purchased from other parties for said cars, or from fire in their shops, strike of their men, or from any other casualty beyond their control, the party of the first part shall not be held liable for damages by reason of said delay to the party of the second part: *provided,* they use all due diligence to complete said contract within the earliest practicable time thereafter.

"*Fifth.* On full payment of said notes, and of the renewals thereof, but not before, the title to said cars, and the absolute property and possession thereof, shall pass to and vest in said party of the second part, or whomsoever they may designate.

Executed in duplicate this thirteenth day of March, 1877.

"Attest: B. & S.,                          BARNEY & SMITH MANUF'G CO.,
    "F. E. SMITH, Asst. Sec'y.          By E. P. BARNEY, Supt.
    "E. S. THROOP.                      "O. P. BERTHOURD."

The contract was executed in Ohio, and the cars delivered to Berthourd on board of cars at Dayton, Ohio. Defendant's agents, who made this contract, knew at the time that these cars were to be taken to Kentucky and run upon the Covington, Flemingsburg & Pound Gap Railroad. They were immediately taken to Kentucky and placed upon the Covington, Flemingsburg & Pound Gap Railroad, lettered so as to indicate they belonged to that road. The combined passenger and baggage car was marked on each side, near the top outside, and on the inside of each, with the letters "Covington,

Flemingsburg & Pound Gap." The flat car was marked "Covington, Flemingsburg & Pound Gap, No. 1." David Wilson & Co. sued out an attachment from the Fleming circuit court against Quintard, making the railroad company a defendant and claiming a lien on its property. This was on the twenty-eighth of March, 1877, and on same day the attachment was levied upon these cars, then upon the road of the Covington, Flemingsburg & Pound Gap Railroad Company. Subsequently, other creditors of Quintard sued out attachments, and had them levied upon the same cars and other rolling-stock on the road. These parties also claim a lien on the railroad's property for their debts.

The Fleming circuit court, on the fourteenth of April, 1877, appointed William F. Fant receiver, and ordered him to take possession of the "railway rolling-stock, and all of its property." This he did by making an agreement with Berthourd, dated May 12, 1877. In this agreement Berthourd recognized the order of the court, and its receiver's right to the possession of the road and its rolling-stock, and agreed with him to run the road upon certain terms therein mentioned. The agreement, however, recited that it was made under protest, and without intending to prejudice Berthourd's rights, or the rights of others, in their claims to the locomotives, cars, or road. Subsequently, the various suits, all of a like character, were, by order of the Fleming circuit court, consolidated. The road was run under the agreement of May, 1877, until February, 1879, when Mr. Fant resigned, and plaintiff, Hart, was appointed in his stead. This was on the ninth of February, 1879, and on the fifteenth of February, 1879, Hart made another agreement with Berthourd, in which he recognized Hart as receiver, being in the possession of the road, and agreed to run it until March 1, 1879, at 12 M., and then to deliver to the receiver the rolling-stock, and all of the property on the track of said road and belonging to it. Berthourd had, by a previous agreement with Fant, agreed that he would submit to the orders of the court. Berthourd says in his deposition that, in fact, he always retained the possession of the cars until the twenty-

eighth of February, 1879, when they were levied upon by the marshal of this court in the suit of Barney & Smith Manufacturing Company against Berthourd. This may be true as to the manual possession of these cars, but the legal and constructive possession was in the receiver from May 12, 1877, else Berthourd was trifling with the Fleming circuit court and its officer, and I will not presume that to have been the fact.

The suit in this court was brought on the twenty-eighth of February, 1879, against Berthourd alone, and prosecuted to judgment, and a writ issued from this court directing the marshal to deliver the cars to the Barney & Smith Manufacturing Company. That company claimed the possession of the cars under its contract of March 13, 1877, and the marshal, under the writ, took possession of them from the receiver of the Fleming circuit court, who immediately sued him in that court and replevied them. Afterwards, the Barney & Smith Manufacturing Company were substituted as defendant instead of the marshal, and upon petition filed removed the case to this court. This suit was approved by an order of the Fleming circuit court, and thus it is properly in this court.

It is insisted that whatever right is not in defendant to these cars remains in Berthourd; and as he is in no way liable to the attaching creditors, the plaintiff can have no right to recover. If this be true, plaintiff certainly has no cause of action, as Berthourd is not a party to the suit in the state court. I think, however, the evidence shows that these cars belong, as against Berthourd, either to Quintard or the railroad company, and in this case it does not matter which. This is shown by affirmative and negative evidence. The negative evidence is the fact that Berthoud has never set up any claim to these cars in the pending suits in the state court, although those suits have been pending since March, 1877. His own interest, as well as his friendliness to the defendant, the Barney & Smith Manufacturing Company, would have impelled him to set up his claim had it been a valid one. The affirmative evidence is the fact that Berthourd, as the agent of Quintard, rendered, in February, 1878,

an account against the railroad company and obtained a judgment thereon in his favor. In this account he includes two thousand and seventy-five dollars ($2,075) paid for cars, which are shown to be the cars in controversy. There is also included in that account an item of six thousand five hundred dollars ($6,500) which Quintard was liable for to the Baldwin Locomotive Works, showing that all of the rolling-stock was then or had been transferred to the railroad company.

The plaintiff, as receiver, represents in this court not only such rights as the attaching creditors acquired by their attachments and suits, and had at the time of his appointment, but also any rights which any of the parties acquired during the pendency of the suits in the state court, at least until the Barney & Smith Manufacturing Company brought its suit in this court and seized these cars, which may have been notice to the receiver of defendant's claim. If the railroad company owns these cars it is as a *bona fide* purchaser, notwithstanding the judgment for the purchase money has not been paid; or if Quintard is the owner they are subject to the attachments against him, unless, of course, the contract of March 13, 1877, gives the defendant a superior right. In considering which law governs this controversy we must look to the place of performance as contemplated by the parties to the contract, and also to the nature of the controversy. The cars were delivered in Ohio, and the cash payment made there, and the note was payable in Ohio. But the cars were delivered, to be taken to Kentucky and used on a railroad there, and the redelivery or reclamation of them was to be in Kentucky. The parties contemplated that part of the contract, if performed, was to be performed in Kentucky. The law of the place of performance would be the controlling law, ordinarily, even as between the parties to the contract. Here the question is whether property located in Kentucky and seized there is subject to seizure, or whether a sale of this property made in Kentucky passed a valid title. We think there can be no doubt that the Kentucky law governs this

controversy. If the authorities cited, or any of them, estab-
lish a contrary doctrine it has escaped me. In *Homans* v.
*Newton*, 4 FED. REP. 885, cited by the learned counsel upon
another point, Judge Lowell says:

"It has, however, been held that one who buys chattels in Massachusetts
of a vendor, whose own title is conditional, takes only what the law of
Massachusetts would give him, even if at the place where the conditional
sale was made the law would have upheld the title of an innocent pur-
chaser. *Hischorn* v. *Canney*, 98 Mass. 149."

In *Rogers' Locomotive Works* v. *Lewis*, 4 Dill. 158, the court
assumes that the Missouri law governed the question of
whether or not the locomotives were liable to seizure under
an exemption against the railroad company, although the
contract, which was very like this one, showed the locomo-
tives were delivered in New Jersey. The supreme court has
settled that question, and it is not, we think, open for discus-
sion. *Green* v. *Van Buskirk*, 5 Wall. 310; *Hervey* v. *R. I.
Locomotive Works*, 93 U. S. 664.

The Kentucky statute is in these words:

"No deed of trust or mortgage conveying a legal or equitable title to
real or personal estate, shall be valid against a purchaser for a valuable
consideration without notice thereof, or against creditors, until such deed
shall be acknowledged or proven according to law and lodged for record."
Gen. St. § 10, c. 24, p. 256.

It is conceded there are many decisions in which the courts
decide that conditional sales are not within either the letter
or spirit of registration acts like this one. We shall not at-
tempt to review the decisions, but confine ourselves to a brief
consideration of those of the Kentucky courts and the supreme
court of the United States. The earlier Kentucky decisions
decided that conditional sales were not within the registration
act. *Baylor* v. *Smither's Heirs*, 1 Littell, 113; *Patton* v. *Mc-
Cane*, 15 B. Mon. 555. But the later decisions are to the
effect that agreements which are usually called conditional
sales are within the act, and that any agreement which has
for its object the securing of a lien for the purchase money,
whatever may be the language used, is also within the act
requiring registration. In *Vaughan* v. *Hopson*, 10 Bush, 338,

Hopson sold Hull a mule and executed his note, with security, for the purchase money. This note was delivered, and with it a memorandum annexed as follows:

"This note is given for a mule, and the mule is bound, or the title of the mule remains in Hopson, until he gets his money.

"*May* 6, 1869.                                            WILLIAM HULL."

Hull received possession of the mule and afterwards sold it to Vaughan, who was a *bona fide* purchaser without notice. Hopson sued Vaughan for the mule, and the court held he could not recover. The court say:

"In order to create a lien for the purchase price of chattels, as against a purchaser for valuable consideration without notice, there must be a conveyance or mortgage to that effect acknowledged and lodged for record as provided by the statute."

In *Greer* v. *Church & Co.* 13 Bush, 430, Church & Co. made an agreement with Mrs. Martin, which, on its face, purported to be a renting to her of a piano, and in it she was given the privilege of buying it within a certain time. The court concluded that the agreement was intended to be and was a sale, and that calling it a renting was a device to secure the payment of the balance of the unpaid purchase money. This agreement was not recorded, and the court held that a purchaser from Mrs. Martin without notice had a superior right to Church & Co. under their contract. The supreme court, in *Hervey* v. *R. I. Locomotive Works*, 93 U. S. 671, sustained the title of Hervey, who was the purchaser of property seized under an attachment against the vendee, the railroad. The locomotive works had delivered the property under an agreement very like the one executed by Berthourd, except that it provided for a renting, and was more in detail. See, also, *Green* v. *Van Buskirk*, 5 Wall. 307.

The same court, in *Heryford* v. *Davis*, decided October term, 1880,* fully sustains the decision in *Greer* v. *Church & Co.* In that case the contest was between an execution creditor of the Keokuk & Kansas City Railway Company and the Jackson & Sharp Company. That company had delivered to the railroad company cars under an agreement which

*102 U. S. 235.

was called a lease, but which the court decided was a sale, and the lease was a device by which one party sought to give and the other to obtain a secret lien for the unpaid purchase money. The underlying principle of these cases is that such agreements, whether called leases or conditional sales, are intended to retain a secret lien for the unpaid purchase money, and are an evasion of the statute. The supreme court has not decided that all conditional sales, even as against a *bona fide* purchaser or creditors, are invalid, but have decided that, on the question of whether or not the registration act of a state includes a conditional sale, it will be controlled by the decisions of that state.

The learned counsel cite *Fosdick* v. *Schall*, 97 U. S. 235, as sustaining the defendant's contract, but I think that case in perfect harmony with the others. There the question was what a mortgagee would take under the provision of his mortgage for future-acquired property. The court held that the mortgagee took only the rights and interest of the mortgagor, and subject to any lien that might be upon the property when acquired by the mortgagor. The cars in that case were lettered to show that they were still the property of the seller, but the decision was not put upon this fact.

The learned counsel, however, insists that the agreement of the defendant is not liable to the objections which existed in the agreements which the court considered in the cases which we have been considering. He lays much stress upon the language of the supreme court in *Heryford* v. *Davis*, in which that court say, in discussing the contract in that case:

"If that contract was a mere lease of the cars to the railroad company, or if it was only a conditional sale which did not pass the ownership until the condition should be performed, the property was not subject to levy and sale under exemption at the suit of the defendant against the company."

This language, read by itself, would be misleading. It should be read in connection with other parts of the opinion, and when that is done it will be seen that the court means by "*only* a conditional sale" one that is really a conditional sale both to the buyer and seller; that is, *that the payment of*

*the purchase money, as well as the passing of the title, is condi-tional.* If, by the terms of the agreement, the purchaser becomes *liable unconditionally* for the purchase price, although by the agreement he may never get the title and ownership of the property, then the agreement is an evasion of the registration statute, as its purpose is simply to retain a secret lien. The defendant's agreement with Berthourd provides that they may resume the possession of the cars if Berthourd failed to pay the deferred payments, note, or renewals, "and may thereafter sell the same at public or private sale, after 10 days' written notice to said party, and apply the proceeds on the unpaid notes, whether due or not; the *said party of the second part still remaining liable for any balance of such notes thereby unpaid.*"

This provision makes the buyer bound *unconditionally* for *the purchase price,* even though he never gets the title and ownership of the property. Is not this conclusive evidence that the agreement which it is insisted evidences a conditional sale is merely a device to retain a secret and unrecorded lien on the property sold? The purchase price of these cars was $2,930, of which $1,450.32 was paid in cash, and a 60 days' note for $1,479.68 given. The agreement provides that if Berthourd failed to pay said note, or any renewal as it became due, or within 10 days thereafter, the Barney & Smith Manufacturing Company would have the right to resume the possession of the cars and sell them at public or private sale. Berthourd, therefore, paid $1,432.32 in cash, and became unconditionally liable for $1,479.68 more; and, according to the agreement, only obtained the use of these cars for 70 days. If he retained them longer it would be entirely at the option of the Barney & Smith Manufacturing Company. This proves that the real nature of the transaction was simply a device to retain an unrecorded lien.

My attention has been called to two recent manuscript opinions of the Kentucky court of appeals, in which it is claimed the court has modified its decision in *Greer* v. *Church & Co.* One of those opinions is to the effect that a contract of renting personal property, in which the party has the priv-

ilege of purchasing, will, if a genuine writing, be valid, and that a renter under such a contract cannot pass title even to a *bona fide* purchaser without notice. The other case decides that, as between the original parties, such contracts as that in *Greer* v. *Church & Co.* gives a valid lien, which will be enforceable except as against a *bona fide* purchaser without notice and creditors who have obtained a right to the property. These opinions do not modify the former decisions, but only make plainer the principle upon which they are based. Whatever may be the decisions in other courts, the decisions which are authority in this court declare such agreements as the one between the Barney & Smith Manufacturing Company and Berthourd to be within the statute of Kentucky requiring liens to be recorded.

Motion for new trial overruled.