SCHNEIDER *v.* DANIEL ET AL.

[No. 23,998. Filed June 29, 1921.]

1. SALES.—*"Conditional Sale."*—*Contracts.*—A "conditional sale" is a purchase for a price paid or to be paid, to become absolute upon a particular event, or a purchase accompanied by an agreement to resell upon particular terms. p. 62.

2. CHATTEL MORTGAGES.—*Characteristics.*—*Consideration.*—*Liability of Mortgagor.*—The usual earmarks of a mortgage are that there is a previous debt, or a present advance of money upon loan, for which some evidence is taken, obliging the borrower personally, to the absolute payment, and that there is a bond for the debt, or a covenant in the mortgage deed for the payment. p. 62.

3. CHATTEL MORTGAGES.—*Conditional Sale Contract.*—*Character of Instrument.*—*Determination.*—In determining whether an instrument is a chattel mortgage or a conditional sale contract, the test is that it is a chattel mortgage where, in event of destruction of the property involved, the loss must be borne by the maker of the instrument, but where the loss is that of the payee, the instrument is a conditional sale. p. 62.

4. CHATTEL MORTGAGES.—*When Treated as Conditional Sale.*—*General Policy of Law.*—Where the security is much greater than the debt the transaction should be treated as a conditional sale as named in the instrument, though the general policy of law leans toward treating such a transaction as a mortgage where the distinguishing feature is not vividly apparent. p. 63.

5. CHATTEL MORTGAGES.—*Construction of Instrument.*—*Pre-Existing Debt.*—*Conditional Sales.*—Where the transaction is founded upon a pre-existing debt or upon money loaned, the general rule is that the transaction is a mortgage, but in the absence of such surroundings the transaction will be held as denominated in the instrument. p. 63.

6. SALES.—*Conditional Sale.*—*Remedies of Vendor.*—Where cattle were delivered under a conditional sale note reserving title in vendor until payment in full, and giving vendor power to declare the note due and to take possession of the cattle without rescinding the contract, and empowering him to sell the cattle without notice, apply the proceeds thereof toward payment of the purchase price, vendee agreeing to pay any deficit in purchase price, *held* that the vendor, as between himself and vendee, might have treated the sale as absolute and sued for the purchase price or he might have elected to retake the property. p. 64.

7. SALES.— *Conditional Sales.— Payment of Purchase Price.— Vendor's Title.—Vendor and Purchaser.*—A conditional sale is distinguished from a mortgage in that the title remains in the vendor until the payment of the purchase price. p. 67.

8. CHATTEL MORTGAGES.— *Evidence.— Sufficiency.— Conditional Sale.*—Where a vendor sold cattle under a conditional sale note reserving the title to the cattle until payment, empowering him to sell the cattle and apply the proceeds upon the purchase price, vendee agreeing to pay the deficit, if any, in the purchase price, the vendor deposited the conditional sale note with a bank as collateral for a loan, *held* the evidence was sufficient to show the parties treated the transaction as an absolute sale, and not a conditional sale. p. 69.

9. CHATTEL MORTGAGES.— *Vendor and Purchaser.— Conditional Sale.*—Where a vendor sold cattle under a conditional sale note, which reserved the title in the cattle until payment in full, empowered him to declare the note due and take possession of the cattle without rescinding the contract of sale, to sell the cattle without notice, applying the proceeds upon payment of the purchase price, vendee agreeing to pay any deficit in the purchase price, *held* the instrument was a conditional sale agreement and not a chattel mortgage. p. 69.

From Marion Circuit Court (24,283) ; *Louis B. Ewbank,* Judge.

Action by Harry Daniel and others against John F. Schneider. From a judgment for plaintiff against the defendant named, he appeals. (Transferred from the Appellate Court under §1394, cl. 2, Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*James Bingham* and *Remster A. Bingham,* for appellant.

*A. M. Bristor* and *W. B. Waddell,* for appellees.

*A. W. Fenstermacher, Amicus Curiae.*

TRAVIS, J.—The subject of this case involves the construction of a certain agreement in writing between the appellee and one Robert Brent. Is this instrument a chattel mortgage or a conditional sale contract?

Appellee Harry Daniel, on May 12, 1914, delivered unto Robert Brent the possession of certain cattle, and

as a part of the transaction Brent executed the instrument in question and delivered it to appellee. The cattle were shipped to Spencer, Indiana, for Brent, and were taken to his farm where they remained until July, 1914. About said time Brent sold the cattle to a stock buyer and later the cattle were shipped to Indianapolis, where they were sold on the live stock market to the appellant.

The nature of this action is a suit by appellee Daniel against appellant and others who were coappellees with Daniel, to recover damages for the alleged conversion of the cattle in question. A trial by jury resulted in a verdict in favor of all the defendants save appellant, Schneider, and a verdict and judgment was rendered against him for $350 in favor of appellee Daniel. The questions here in issue arise upon appellant's motion for a new trial, for the reasons that the verdict is not sustained by sufficient evidence and is contrary to law.

The written instrument executed by Brent in favor of appellee Daniel was in the form of the usual conditional sale note, but had in addition thereto the following condition:

"The express condition of the sale and purchase of five springer cows and two cows and calves for which this note is given is such that the title, ownership, or right of possession does not pass from the said Harry Daniel until this note and interest is paid in full; that the said Harry Daniel has the full power to declare this note due and take possession of the said cows at any time he may deem himself insecure or even before the maturity of this note, without rescinding the contract of the sale for which the same was given, and may sell the said cows at private sale or public auction as he may deem more advantageous, without any notice thereof to the parties hereto; the proceeds of the sale after deducting all expenses to be applied to the payment of whatever sum may then be due on the purchase price of said cows. And I hereby agree to pay the deficiency if said proceeds shall fail to

satisfy said debt. And the assignment of the note to any one by the said Harry Daniel shall be held to convey to said assignee all the rights of said Harry Daniel in and to this note and contract. \* \* \*."

Contracts of conditional sale may take such form as the parties choose to give them, but the legal aspect depends not upon the name which the parties may
1. have given to the contract, nor upon the form of the instrument, but upon the intention as evidenced by the entire contract. A chattel mortgage is a security for a debt; and a conditional sale is a purchase for a price paid or to be paid, to become absolute upon a particular event, or a purchase accompanied by an agreement to resell upon particular terms. It is the latter that runs so nearly into a mortgage. Courts lean toward construing them as mortgages. There is no rule of law that the sale shall not be made conditional. In a case from another jurisdiction under consideration, it was held that the deed of sale was absolute on its face, but it bore the following indorsement: "N. B. If the above bound T. W. Poindexter pay to the above named McCannon, the sum of four hundred dollars, within twelve months from the date hereof, above bill of sale to be void, and negro boy returned." The court said the clause may well consist with a contract of either description, and that it is equivocal in itself. *Poindexter* v. *McCannon* (1830), 16 N. C. 373, 18 Am. Dec. 592.

The usual earmarks of a mortgage are: (1) That there is a previous debt; or a present advance of money upon loan, for which some evidence is taken,
2. obliging the borrower personally, to the absolute payment; (2) There is a bond for the debt, or a covenant in the mortgage deed for the payment.
3. It is always a question—whether mortgage or no mortgage—Whose loss will it be if the thing

is destroyed? If that of the maker of the deed, then it is a mortgage; but if it be the loss of the payee, it is a conditional sale.

In the case at bar it seems that Brent continued bound for the debt if Daniel so elected, when considering the following words taken from the instrument, "And I hereby agree to pay the deficiency if said proceeds shall fail to satisfy said debt," which is in favor of treating the transaction as a mortgage, but where the security is much greater than the debt, as in this case, the transaction should be treated as a conditional sale as named in the instrument, and against the general policy of law which leans toward treating such transaction as a mortgage where the distinguishing feature is not vividly apparent.

And where the transaction was founded upon a preexisting debt or upon money loaned, the general rule is that the transaction is a mortgage; but in the absence of such surroundings the transaction will be held as denominated in the instrument, which in the present case is a conditional sale.

In this case the question is extremely close in this feature: If Daniel holds his transaction to be a conditional sale, he would be the loser if the chattels were destroyed; on the other hand, he could retake the cattle, sell them, and if the proceeds of such sale were less than the sale price to Brent he could still sue the purchaser Brent for such balance which, as held by some cases, is incompatible with a conditional sale.

Daniel did not stand a chance to lose in any event, except upon the bankrupt condition of Brent—which does not control—for Brent's promise to pay is absolute, should the proceeds of the sale of chattels as provided for in the instrument itself fail to pay the debt. If Brent was the party who lost in the event the chattels were destroyed, such chattels were his property, and

his written obligation was a mortgage. In this sense the cattle were security for the debt for the reason that Daniel was to retake the cattle only for the purpose of selling them to make proceeds to pay his debt, backed by an unconditional promise of Brent in writing to pay any deficiency.

In this case, as between vendor and vendee, the vendor may have had two remedies: (1) Treat the sale as absolute and sue for the purchase price; or (2) **6.** the right of election to retake the property. This is a proper interpretation of the sale agreement between the parties to the original sale, as held in the case of *Smith* v. *Barber* (1899), 153 Ind. 322 at page 328, 53 N. E. 1014.

Conditional sales are dangerous transactions, in that the innocent purchasers from the original vendees are likely to become involved in just such transactions as the one at bar. Such purchasers cannot by any ingenuity protect themselves except to refrain from buying anything from any one, because usually the only persons privy to the agreement are the vendor and vendee, and the only way that the vendee can make a sale of the property under temptation of distress is to declare to a prospective buyer his absolute ownership and his absolute right to sell.

Different positions taken by different courts upon this subject are well illustrated by the case of *Turk* v. *Carnahan* (1900), 25 Ind. App. 125, 57 N. E. 729, 81 Am. St. 85—where the court says: "The law will not permit a vendor of property, who retains the legal title in himself to take possession of it upon default of payment, sell, or otherwise dispose of it, and then sue the vendee for the balance of the purchase price."

As between the parties to the contract, they had their eyes open, and could be or were legally charged with knowledge of the effect of their act; but equity, it seems,

ought not to permit the blind to be led into legal traps, without power, either legal or equitable, to come to their aid to extricate them.

It would seem almost that the vendor in the case at bar, according to his contract, had a lien upon the cattle for the amount they would sell for upon a sale made for the purpose of making assets to pay or partly pay the note or obligation in question, with the unconditional promise over by the vendee to pay any deficiency. Such language reads like a mortgage, wherein the mortgaged property shall be sold to pay the debt, coupled with the unconditional promise of the mortgagor to pay the debt evidenced by the note in any and all events. *Andrews & Co.* v. *Colo. S. Bank* (1894), 20 Colo. 313, 36 Pac. 902, 46 Am. St. 291; *Palmer* v. *Howard* (1887), 72 Cal. 293, 13 Pac. 858, 1 Am. St. 60; *Hart* v. *Barney, etc., Co.* (1881), 7 Fed. 543.

In answer to the above, and against the rule quoted from *Turk* v. *Carnahan, supra,* that, notwithstanding the language in the contract, "And I hereby agree to pay the deficiency if said proceeds shall fail to satisfy said debt," such language is not inconsistent with the retention of title in the vendor until full payment, and that it does not destroy the effect of the transaction, as evidenced by the contract, to hold the title in the vendor. *Studebaker Bros. Co.* v. *Mau* (1904), 13 Wyo. 358; 1 Mechem, Sales §579; *Kimball Co.* v. *Mellon* (1891), 80 Wis. 133, 48 N. W. 1100; *Nichols* v. *Ashton* (1892), 155 Mass. 205, 29 N. E. 519.

The facts in the case of *Harkness* v. *Russell* (1886), 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, as to similarity of contract, are quite like the facts in this case, and the opinion by Mr. Justice Bradley, is a text on the subject, yet it may be distinguished from the case at bar because of the fact that the purchaser of the goods from

the conditional sale vendee knew of such condition and that the conditional sale contract did not conform to the law of Idaho in relation to mortgages. The cases reviewed in this very able opinion are collated with rare discrimination, and while deference is shown to the law of those states which lean toward the early English rule, where bankruptcy intervenes because of statutory inhibition, the holding appears to be that the general rule of law is that, in the absence of fraud, an agreement for a conditional sale is good and valid, as well against third persons as against the parties to the transaction; and the further rule, that a bailee of personal property cannot convey the title, or subject it to execution for his own debts, until the condition on which the agreement to sell was made has been performed.

In the case of *Crompton* v. *Beach* (1892), 62 Conn. 25, 25 Atl. 446, 18 L. R. A. 187, 36 Am. St. 323, the court arbitrarily declares the instrument not to be a mortgage for the sole reasons that in order to be a mortgage it must first have been executed with statutory formalities, which are lacking, and second, that it should have been recorded, which it was not.

While there is eminent authority expressed through judicial opinions, that in doubtful cases the transaction shall be construed as a mortgage rather than a conditional sale, for the reason that an error which converts a conditional contract of sale into a mortgage is less harmful than one which converts a mortgage into a conditional sale, it is not the absolute rule. *Pontiac Buggy Co.* v. *Skinner* (1908), 158 Fed. 858; *Hughes* v. *Harlan* (1901), 166 N. Y. 427, 60 N. E. 22.

The foregoing held to be the rule in some jurisdictions by some courts, seems to have been very wisely tempered by the provision, that nothing is to be inferred which is contrary to the clearly expressed intention of the parties, citing *Wheeland* v. *Swartz* (1795), 1 Yeates (Pa.)

579; but in order to follow the expressed intention of the parties such intention must be so clear that it is not equivocal, so that it might be well said from an examination of the contract itself, that the parties to such transaction could not possibly be in collusion to play fast and loose with any one of the general public who might be drawn into dealings with them or either of them in relation to the property which was the subject of their agreement.

Parties to conditional sales are not bound to have in contemplation the possible future acts of any other persons, from which it follows that a contract of conditional sale may take such form as the parties choose to give it, although the legal effect of such contract must depend upon the instrument itself, and not upon the name given it by the parties thereto, nor necessarily upon the form of such instrument. *Hughes* v. *Harlam, supra; Heryford* v. *Davis* (1880), 102 U. S. 235, 26 L. Ed. 160; *Harron* v. *Wilson* (1906), 4 Cal. App. 488, 88 Pac. 512; *Racine-Sattley Co.* v. *Meinen* (1907), 79 Neb. 32, 114 N. W. 602.

The distinguishing feature of the so-called conditional sale is that the title to or the property in the chattels remains in the seller until the payment of the 7. purchase price, *Forest* v. *Hamilton* (1884), 98 Ind. 91; *Fleury* v. *Tufts* (1886), 25 Ill. App. 101; *De La Vergne Co.* v. *Hub Brewing Co.* (1900), 175 Mass. 419, 56 N. E. 584, and in which the buyer of the goods or chattels is entitled to the possession and use of the same until the default in payment. *Staunton* v. *Smith* (1906), 6 Pennewill (Del.) 193, 65 Atl. 593.

Continuing in this reasoning in relation to this class of transactions, it is held that the security which is retained by the seller is not a *lien*, but a reservation of title, and that he has the right to pursue the property in *specie*. *Black Diamond Coal-Min. Co.* v. *Grady*

(1898), 87 Fed. 232; *Van Allen* v. *Francis* (1899), 123 Cal. 474, 56 Pac. 339. It will be noted that herein the consideration was given to the promise to pay which was termed an absolute promise, in which case the courts lean toward holding the instrument relating to such transactions to come very close to the line in which they ought to be considered as chattel mortgages, but it seems to be well settled that such a transaction is none the less a conditional sale, because the promise to pay is absolute, or that notes were given for the purchase price, so long as such notes are not given as an absolute payment. Citing *Harkness* v. *Russell, supra; Perkins* v. *Mettler* (1899), 126 Cal. 100, 58 Pac. 384; *Van Allen* v. *Francis, supra; Racine-Sattley Co.* v. *Meinen, supra.*

It is admitted that a case like the case at bar, when considered along with the cases last cited, comes very close to being a chattel mortgage; but from well-considered cases, the contract is not to be considered a chattel mortgage where on default in payment the sale of the property is to be made and any surplus paid to the buyer, although this is regarded as a strong indication that the intention of the parties was that the sale was absolute and that the agreement between them was a security therefor. *Herbert* v. *Rhodes-Burford Furniture Co.* (1902), 106 Ill. App. 583; *Palmer* v. *Howard, supra; Knowles Loom Works* v. *Knowles* (1906), 6 Pennewill (Del.) 185, 65 Atl. 26.

The evidence in this case seems clear and unequivocal, and there is not much dispute as to the actual facts. The whole dispute comes upon the question of interpretation of the language of the instrument under consideration. From the foregoing, and especially the latter part of the previous discussion, it seems to be well founded that where the instrument itself does not dispute the written intention of the parties therein, that such intention is expressed by the words used to show a

sale upon a condition, and that the proper construction is to hold that the purpose of the instrument was to show a conditional sale. An examination of the instrument fails to show any earmarks in language customarily used by business men, that it was intended that Daniel was to part with the legal ownership of the cattle in question. He may have been very zealous in writing his contract double to protect himself in any and all events, yet as shown by the case of *Smith* v. *Barber, supra,* he had but the two remedies. He could at any time disavow his right to retake the property as his own, and could consider the sale absolute as against the conditional purchaser and sue the maker on the note. In the case at bar he sought to retain the legal ownership of the cattle and to follow them in specie, and when found that the cattle had been slaughtered, to avail himself of his right in damages from the one who had purchased them from his conditional vendee.

It was shown by evidence that the vendor deposited the conditional sale note with a bank as collateral security for a loan. It is further contended by appellant that this act of appellee (vendor) Daniel was such as to be a construction in law that the sale was not treated by the parties to the instrument in question as a conditional sale, but a sale absolute. We do not concur in this conclusion.

From the foregoing the conclusion follows that the instrument in question was evidence of a conditional sale. Having held that the instrument in question was a conditional sale agreement, we find that the verdict of the jury was sustained by sufficient evidence, and that it was not contrary to law.

Judgment is affirmed.

Ewbank, J., not participating. Townsend, C. J., dissents.