**In the Matter of the KOKOMO TIMES PUBLISHING AND PRINTING CORP., Bankrupt.**

**No. IP 66–B–2245.**

United States District Court
S. D. Indiana,
Indianapolis Division.

July 5, 1968.

William F. Welch, of McHale, Cook & Welch, Indianapolis, Ind., for the Trustee.

Jerry P. Belknap of Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., and Eugene J. McGarvey, Jr., of Fell, Fell & McGarvey, Kokomo, Ind., for The Goss Co.

## MEMORANDUM AND ORDER ON PETITION FOR REVIEW OF REFEREE'S ORDER

STECKLER, Chief Judge.

This matter came before the undersigned district judge for review of an order of the Honorable Paul A. Pfister, Referee in Bankruptcy, granting the reclamation petition of The Goss Company, a division of Miehle-Goss-Dexter, Incorporated, to reclaim a printing press in the possession of The Kokomo Times Publishing and Printing Corp., which at the time of the order was the debtor in possession in these proceedings.

The Referee found that The Goss Company entered into a valid conditional sales contract for the sale of a 6-unit Goss Suburban press, as described in the contract, to three individuals, Floyd F. Cook, Beryl E. Cook, and Frank Gregory, as conditional vendees. While the Referee made no specific finding as to the date and place where the contract was entered into, it is clear from the contract that it was entered into on June 15, 1964, at Chicago, Illinois, and that the parties agreed that the contract would be governed by the laws of the State of Illinois. The Referee found that no financing statement was filed in Indiana pursuant to the Uniform Commercial Code which went into effect in Indiana on July 1, 1964. Illinois had adopted the Uniform Commercial Code prior to the date of the signing of the contract.

Petitioner bases its right to reclamation on the terms of the contract. It asserts that the contract is governed by the Indiana Conditional Sales Act which was in effect at the time of the execution of the contract.

The Referee found that the contract provided for a cash purchase price of $136,500.00, and called for a total cash down payment of $27,300.00, leaving a deferred balance of $109,200.00, to which was added interest in the amount of $35,-169.96, making a total deferred time balance of $144,396.96, which was evidenced by eighty-four (84) promissory notes, each payable to The Goss Company in the amount of $1,718.69, including principal and interest, and signed by Floyd F. Cook, Beryl E. Cook, and Frank Gregory. The promissory notes were numbered consecutively one (1) through eighty-four (84), inclusive, and were due monthly and consecutively one (1) to eighty-four (84) months after the execution date, which was June 24, 1964.

The Referee found that substantially all component parts of the press were shipped from various points in the United States by common carrier to The Kokomo Times Publishing and Printing Corp. plant at Kokomo, Indiana, and that all of the component parts of the press were delivered by the common carriers to the plant some time in the month of June 1964, but in all cases prior to July 1, 1964, with the exception that a replacement mercury blanket, a replacement step shaft, and a roller for the paper stand arrived at the site of the erection of the press after July 1, 1964.

The Referee found that the unloading of the press from the trucks of the common carriers and the erection of the press began in Kokomo at the plant of The Kokomo Times Publishing and Printing Corp. on June 17, 1964, under the supervision of one Joe Moll, an employee of The Goss Company, and that work continued on the erection of the press without interruption until it was completed on or about July 20, 1964. The first edition of The Kokomo Morning Times newspaper was published on the press on July 21, 1964, and Mr. Moll left the erection site on the 25th day of July, 1964. Although the Referee made no finding, the evidence in the record shows that The Goss Company employee, Mr. Moll, was sent to the erection site pur-

suant to the contract to supervise the erection of the press at the expense of the buyers.

The first twenty-two (22) notes were paid, the last of which was due and payable on April 24, 1966. The twenty-third note was due on May 24, 1966; it was not paid when due and has not been paid since its due date, and no payments were received by The Goss Company under the contract since prior to May 24, 1966.

The Referee found that the contract was delinquent and according to its terms the remaining unpaid balance was accelerated so that the total remaining balance was due and payable to The Goss Company, and that since such payments had not been made The Goss Company was entitled to the immediate repossession of the press.

The Referee found that the debtor in possession claimed to be the assignee of Floyd F. Cook, Beryl E. Cook, and Frank Gregory, the conditional vendees under the contract, but he found that the evidence introduced in the hearing before him was inconclusive on the issue of assignment in that there was no evidence of a written assignment of the contract executed by the conditional vendees. On the other hand, he found that Floyd F. Cook, Beryl E. Cook, and Frank Gregory claim no interest in the press under the contract, and that therefore as between The Kokomo Times Publishing and Printing Corp. and Floyd F. Cook, Beryl E. Cook, and Frank Gregory, any equity of the conditional vendees there might have been under the contract belonged to The Kokomo Times Publishing and Printing Corp. The Referee found that The Goss Company did not consent to or have knowledge of any assignment there may have been by Floyd F. Cook, Beryl E. Cook, and Frank Gregory to the debtor in possession.

The Referee found that the balance due The Goss Company under the contract as of January 17, 1967, was $92,-894.16, and that interest was accruing at the rate of $17.81 per day from and after January 17, 1967. The balance due as of that date the Referee found to be $92,894.16.

The Referee found that the press had an appraised value of $105,500.00.

In his conclusions the Referee concluded that the sales agreement between The Goss Company, as vendor, and Floyd F. Cook, Beryl E. Cook, and Frank Gregory, as vendees, executed on June 15, 1964, was a valid conditional sales contract under which title to the property sold under the contract was reserved to The Goss Company until the total purchase price was paid. The Referee also concluded that the law applicable to the contract is the Uniform Conditional Sales Act of the State of Indiana, Ind.Ann. Stat. § 58–801, et seq., by virtue of which no recording or filing of the conditional sales contract was necessary to preserve the reservation of title by The Goss Company as against creditors of the vendees or creditors of the vendees' assignee. The Referee further concluded that the Uniform Commercial Code, as enacted in Indiana, did not apply to the facts of the case because the execution of the contract on June 15, 1964, and the commencement of performance under the contract on June 16, 1964, constituted a transaction validly entered into before the effective date of the Uniform Commercial Code in Indiana, which was July 1, 1964, and for that reason the rights, duties, and interests flowing from the contract remained valid after July 1, 1964, and might be terminated, completed, consummated, and enforced as required or permitted by the Uniform Conditional Sales Act as though the repeal of the Uniform Conditional Sales Act had not occurred. Ind.Acts 1963, ch. 317, § 10–106 at 760 (annotated in notes under Ind.Ann.Stat. § 19–1–101). The Referee concluded that the debtor in possession, because of an apparent equity value in the press, should have the privilege of selling the press for cash for an amount not less than the total amount due The Goss Company, including attorneys' fees and expenses, provided, that The Goss Company be paid the total amount due it from the proceeds of the

sale. A judgment on the Referee's findings and conclusions was rendered accordingly.

The Trustee's view of the legal issues involved is that the questions on review are: (1) Was The Kokomo Times Publishing and Printing Corp. buying The Goss press, and (2) did The Kokomo Times Publishing and Printing Corp. get possession of the press after the effective date of the Indiana Uniform Commercial Code, thus requiring Goss to file a financing statement?

It is obvious from the Referee's findings and conclusions that he found in the negative on each of these two questions. In this the undersigned district judge concurs and affirms the Referee's findings and conclusions, for from the record before the court the court cannot conclude that the Referee's findings and conclusions are clearly erroneous.

█ There clearly is a sufficient basis in fact for the Referee to find that The Goss Company was dealing with the three individuals as purchasers when the contract was executed on June 15, 1964. Negotiations with The Goss Company for the purchase of the press began in 1963 or early 1964. The initial negotiations were commenced on the basis that Frank Gregory, who was then forming The Kokomo Times Publishing and Printing Corp., would arrange for a leasing company or other substantial buyer to purchase the press and in turn lease it to the organization later to become The Kokomo Times Publishing and Printing Corp. On January 28, 1964 a preliminary contract was provided by The Goss Company for the purpose of identifying the equipment to enable The Goss Company to make shipment in March 1964. The original negotiations were conducted by a sales representative of The Goss Company and Frank Gregory, as an individual. The Kokomo Times Publishing and Printing Corp. had not yet become an entity. During the negotiations subsequent to January 28, 1964, Frank Gregory informed The Goss Company sales representative that four printing press units originally contemplated would not

be sufficient to satisfy the requirements of the newspaper then contemplated. As a result negotiations were conducted to add two units to the press. While there is a basis in the record for the Referee to find that Frank Gregory anticipated finding a buyer financially able to purchase the press and lease the same to The Publishing Company, the record shows that this did not materialize for it appears that an agreement was reached by The Goss Company and The Kokomo Times Publishing and Printing Corp. that the press would be sold on conditional sale to The Kokomo Times Publishing and Printing Corp. with the personal guarantee of Frank Gregory, Beryl E. Cook and Floyd F. Cook. Such an agreement was reached after these individuals had submitted complete financial statements to The Goss Company, and The Goss Company was satisfied with their financial reliability. A written sales agreement was offered by The Kokomo Times Publishing and Printing Corp., Frank Gregory, President, and attached to it was the personal guarantee signed by Frank Gregory, Beryl E. Cook, and Floyd F. Cook. This agreement became effective on May 12, 1964, when it was accepted at Chicago by The Goss Company. Prior to April 30, 1964, and subsequent to January 28, 1964, The Goss Company tentatively identified the particular press by serial number and marked it for The Kokomo Times Publishing and Printing Corp. Thus the printing press was identified in the contract at the time of its execution and effective date of May 12, 1964. The sales agreement between The Goss Company and The Kokomo Times Publishing and Printing Corp. contemplated shipment from The Goss Company during the first week in June 1964.

Shortly after the execution of the agreement of May 12, 1964, Frank Gregory communicated with The Goss Company in regard to the execution of a new sales agreement containing essentially the same terms but with Frank Gregory, Floyd F. Cook, and Beryl E. Cook as buyers instead of guarantors

as previously arranged. Inter-office correspondence within The Goss Company organization and with Frank Gregory as President of The Kokomo Times Publishing and Printing Corp. between the dates of May 22, 1964, and June 16, 1964 (Petitioner Goss Exhibits 15, 16, 17 and 18), indicate that The Goss Company understood that the press would be sold to Frank Gregory, Floyd F. Cook, and Beryl E. Cook, a partnership, and they, in turn, would lease the press to The Kokomo Times Publishing and Printing Corp. As argued in the petitioner's trial brief, there was no reason why such an arrangement would not be satisfactory to The Goss Company and for The Goss Company to assume that the individuals were purchasing the equipment in order to obtain leasing benefits, tax advantages, and a better return on their investments than they would realize by loaning the purchase price to The Kokomo Times Publishing and Printing Corp. or by owning stock in The Kokomo Times Publishing and Printing Corp.

Pursuant to further negotiations, at the request of Frank Gregory, Floyd F. Cook, and Beryl E. Cook, and by mutual consent, the sales agreement of May 12, 1964, was rescinded and a new sales agreement was offered on June 1, 1964. This agreement became effective when signed by The Goss Company on June 15, 1964. No mention of The Kokomo Times Publishing and Printing Corp. is made in the sales agreement nor is there any indication that any of the individuals signed in a representative capacity. The only difference between the agreement of June 15, 1964, and that of May 12, 1964, is that a greater initial payment was to be made under the agreement of June 15, 1964. This was done at the instance of the buyers to obtain a more advantageous interest rate on the deferred balance.

The record shows clearly that substantially all the parts of the printing press were delivered to the premises of the buyers in Kokomo on the 17th and 18th of June 1964 and prior to July 1, 1964, although a few items were delivered after that date, as found by the Referee.

No financing statement was filed in Indiana in accordance with the Commercial Code which went into effect on July 1, 1964. The press was installed under the supervision of an employee of The Goss Company whose services were paid for by the buyers. All the work in installing the press and placing the same in operation was completed on July 25, 1964.

Two main legal questions are presented in this case. One of them concerns which law should be applied to determine priorities, *i. e.*, the law of Illinois which requires filing of the financing agreement, or the law of Indiana which did not require the filing of a conditional sales contract at the time of the transaction. The second, assumed in part by the first, is whether a conditional seller of goods who completed physical delivery of the bulk of the goods under the contract prior to the adoption of the Uniform Commercial Code in Indiana must comply with Code provisions requiring filing when installation is completed and some incidental parts are delivered after the Code.

Prior to the adoption of the Code the interest of a seller of equipment under a conditional sales contract was valid without filing in Indiana. The Indiana version of the Uniform Conditional Sales Act omitted filing or recording provisions (except as to fixtures). See Burns Ind.Ann.Stat. §§ 58–801 through 58–829 (Burns 1961 Repl.); Champa v. Consolidated Finance Corp., 231 Ind. 580, 110 N.E.2d 289, 36 A.L.R.2d 185 (1953); Schneider v. Daniel, 191 Ind. 59, 131 N.E. 816, 17 A.L.R. 1410 (1921). Both in Illinois and in Indiana after the Code, the seller of goods retaining an interest therein as security must perfect or file, or his security interest will be defeated by the trustee in bankruptcy. Uniform Commercial Code §§ 9–301, 9–302. Therefore, the main issue in this case concerns the question of whether the Code, in effect in Illinois at the time of the transaction and in effect in Indi-

ana after delivery to the debtor's plant and before completion of installation, controls. The contract in this case provides that:

"This contract shall be governed by the laws of the State of Illinois and shall be effective as of the date of acceptance by Seller * * *." (Item 11 of contract terms.)

■ As noted above, Indiana law did not require the conditional seller to file or record his interest, and he could reclaim his goods from purchasers and creditors without filing. This contract was entered into approximately fifteen (15) days before the Indiana Uniform Commercial Code became effective. The goods were placed in the debtor-buyer's plant before the effective date of the Indiana Commercial Code, although installation under the supervision of the seller's employee was not completed until July 25, 1964.

Under the provisions of § 19–10–106 of the Indiana version of the Commercial Code it expressly is provided:

"Transactions validly entered into before the effective date specified in section 10–101 [July 1, 1964] and the rights, duties and interests flowing from them remain valid thereafter and may be terminated, completed, consummated or enforced as required or permitted by any statute or other law amended or repealed by this Act as though such repeal or amendment had not occurred."

Literally applied, this statute means that under conditional sales contracts executed prior to July 1, 1964, filing requirements and priorities provisions of the law prior to July 1, 1964, applied. Interpretation of similar provisions of the Commercial Code in other states consistently has been the same, i. e., agreements entered into prior to the effective date of the code are regulated by pre-Code law as to filing priorities, remedies and the like under the agreement. E. g., Wilson v. Prudential Ins. Co. of America, 239 Ark. 1071, 396 S.W.2d 300 (1965); Peachtree News Co. v. MacMillan Co., 112 Ga.App. 556, 145 S.E.2d 666 (1965); Rinnert v. Indianapolis Morris Plan Corp., 74 Ill.App.2d 388, 220 N.E.2d 256 (1966) (remedies provisions of pre-Code law applied to mortgage executed prior to adoption of the Code even though remedy asserted after Code went into effect); In re Merkel, 25 A.D.2d 764, 269 N.Y.S.2d 190 (2d Dept. 1966) (conditional sale before Code went into effect, valid against creditors after Code went into effect even though not recorded); James Talcott, Inc. v. Taylor Industries, Inc., 1 Ohio App.2d 111, 198 N.E.2d 271 (1963) (where mortgage executed prior to Code, and question of priority as to artisan's arising after the Code—held that pre-Code law applied); cf. Boeing Airplane Co. v. O'Malley, 329 F.2d 585 (8th Cir. 1964).

An easy mistake can be made in thinking that this transaction is governed by the Uniform Commercial Code. Under prior law, Ind.Ann.Stat. § 58–203 (Burns Repl. 1961) (§ 19 of the Uniform Sales Act) it was provided:

"Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such things be done."

It could be argued, though incorrectly, that the goods in this case were not in a deliverable state before the Code because installation of the press required a great deal of work, and this work was not completed until after July 1st. And so, the argument could run, since the goods were delivered after July 1, 1964, the Code applied. However, such a narrow view of the Code is not justified in any event. One of the overriding objectives of the Code was to bring together the various branches of law governing sales and security transactions. Even though a contract may be controlled by Article 2 of the Code, it may also be governed by Article 9, with the consequence that the "transaction" here relates to the original contract of sale, and not alone to the security or title-retention part thereof. Article 9 relating to secured transac-

tions and Article 2 are closely intertwined. See Uniform Commercial Code § 9–113. In fact, the seller retained a perfected kind of security interest until delivery under the provisions of §§ 2–705 and 9–113 of the Code, and § 53 of the Uniform Sales Act, Ind.Ann.Stat. § 58–402 (Burns Repl. 1961) in effect prior to July 1, 1964.

■ The argument that title did not pass until after the Code went into effect in Indiana is incorrect for several other reasons. The goods were in a deliverable state when put on the premises of the debtor. The fact that further installation work was required did not prevent title from passing. *E. g.*, Sandford v. Wiggins Ferry Co., 27 Ind. 522 (1867) (recognizing that transfer of possession passed title despite that further work upon goods was to be done).

Since Illinois law controlled the agreement, delivery of the goods to the carrier in Illinois was sufficient to pass title, and at that point the petitioner-seller, as between the parties, retained, at most, a security interest in the goods. See Uniform Commercial Code § 2–401 (2) (a); § 2–319 (if F.O.B. place of manufacture, which was in Illinois). In any event title passed under Illinois law when the goods were delivered to the buyer in Indiana prior to July 1, 1964 as provided by Uniform Commercial Code § 2–401(2). The Code no longer retains the above quoted provision from the Uniform Sales Act making decisive the requirement that something further be done to the goods to put them in a deliverable state.

■ The contract in this case adopts Illinois law as governing the contract. Since under Illinois law at the time the contract was entered into, filing generally was required to perfect the interest of the petitioner-seller against creditors and purchasers, it could be urged that the security interest was invalid against the trustee or creditors of the bankrupt. In general see Uniform Commercial Code §§ 9–301, 9–302. This argument must fail for several reasons.

First, by adopting Illinois law, the parties adopted the conflicts rule of law which is stated by the Uniform Commercial Code. It provides:

" * * * if the parties to the transaction understood at the time that the security interest attached that the property would be kept in this state and it was brought into this state within thirty days after the security interest attached for purposes other than transportation through this state, then the validity of the security interest in this state is to be determined by the law of this state." Ill.Ann.Stat., ch. 26, § 9–103(3) (Smith-Hurd 1963).

By negative inference, this means that if a security interest attaches to goods sold in Illinois and the goods taken into Indiana within thirty (30) days, validity of the security interest is to be determined by Indiana law if the parties understood that the property would be kept in Indiana. *Accord*: In re Princeton Rubber Co., 272 F.2d 197 (7th Cir. 1959); Harrison v. State Bank of Hull, 11 Ill.App.2d 471, 138 N.E.2d 41 (1956).

■ Moreover, the parties could not by agreement make Illinois law bind creditors and purchasers who were not parties to the agreement. It then becomes a matter for the Indiana conflicts of laws. Indiana, in a case of this kind, would apply Indiana law to determine the rights of third parties. Cable Co. v. McElhoe, 58 Ind.App. 637, 108 N.E. 790 (1915). The policy of the Commercial Code expressed by § 9–103(3) should be adopted by analogy if the Indiana conflicts rule is uncertain. E. g., see Yarlott v. Brown, 192 Ind. 648, 654, 138 N.E. 17 (1923).

■ This case is not affected by whether the debtor in possession is or was the purchaser. In the briefs some unnecessary time and argument was devoted to the question as to whether Frank Gregory, Floyd F. Cook, and Beryl E. Cook, the predecessors of the debtor in possession, were the purchasers. No legal problem stems from this fact because the Cooks and Gregory make no

claim to the property. Evidence in the record is abundant that the property at the time of the reclamation petition was held by the debtor in possession. The transfer from such predecessors of the debtor in possession to the debtor in possession could in no way affect the rights of the petitioner to the machinery absent novation or other agreement. Navin v. New Colonial Hotel, 228 Ind. 128, 90 N.E.2d 128 (1950). In the absence of other evidence, the transfer is "subject" to the security interest of the seller and no obligation upon the debt was incurred by the debtor in possession. Mutual Ben. Life Ins. Co. v. Lindley, 97 Ind. App. 575, 183 N.E. 127 (1933). The Referee made no finding that a novation was effected or that an agreement between the contracting parties was made to alter their original obligations under the contract.

■ One final legal question remains unsolved. Under Illinois law, the petitioner would hold a security agreement and would not be entitled to reclaim the property unless it was insufficient to pay the indebtedness. Ill.Ann.Stat., ch. 26, §§ 9–501 through 9–507 (Smith-Hurd 1963). Under Indiana law the petitioner could retake the goods and keep them without a resale, since less than fifty percent was paid on the purchase price. See Ind.Ann.Stat. §§ 58–815 through 58–818 (Burns Repl. 1961). Compare Barth Equipment Co. v. Perlstein, 128 F.2d 253 (2d Cir. 1942) with In re Forgee Metal Products, Inc., 229 F.2d 799 (3d Cir. 1956). However, since the contract makes Illinois law applicable, it seems that the petitioner has no absolute right of reclamation. Since there will be no surplus and since the parties have agreed to a sale by the debtor in possession, this problem is not important. However, the right to recover rental or damages could be a significant issue, and this is related to the nature of the petitioner's claim. The petitioner is entitled to interest upon his claim up to the time petitioner is paid, and also is entitled to any reduction in value of the property between the time of the petition to reclaim and the time of the sale. Barth Equipment Co. v. Perlstein, *supra*.

■ The allowance by the Referee of interest after giving credit for add-on interest which was not earned was therefore proper. Up until January 16, 1967, the total amount owing was $92,894.16. Interest (computed at $17.81 per day) from that date is proper. The claim that interest upon interest is usury is specious and is not supported by legal authority. It cannot be raised by the debtor in possession. Cutchen v. Coleman, 13 Ind. 568 (1859). The Referee made no finding, and there was no evidence showing that the value of the printing press deteriorated between the time of the petition to reclaim and the time of the Referee's decision or sale. Therefore, there is no basis for allowing any amount for depreciation. See Barth Equipment Co. v. Perlstein, *supra*.

The Referee by his order of March 23, 1967, among other things, authorized the debtor in possession to sell the Goss press for cash for a sum not less than the total amount due The Goss Company, which amount consisted of the following sums:

(1) Amount due under contract as of January 17, 1967—$92,894.06.

(2) Interest at the rate of $17.81 per day from January 18, 1967, to and including the date of sale;

(3) The amount of attorneys' fees paid and incurred by The Goss Company in connection with The Goss Company's efforts to regain possession of the Goss press, which attorneys' fees shall be approved by the Referee subsequent to a petition by the debtor in possession for authority to sell the Goss press and prior to the actual sale of the press.

The order, to the extent here repeated, is hereby affirmed.